(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HILLMAN *v.* MARETTA

CERTIORARI TO THE SUPREME COURT OF VIRGINIA

No. 11–1221.   Argued April 22, 2013—Decided June 3, 2013

The Federal Employees' Group Life Insurance Act of 1954 (FEGLIA) establishes an insurance program for federal employees. FEGLIA permits an employee to name a beneficiary of life insurance proceeds, and specifies an "order of precedence" providing that an employee's death benefits accrue first to that beneficiary ahead of other potential recipients. 5 U. S. C. §8705(a). A Virginia statute revokes a beneficiary designation in any contract that provides a death benefit to a former spouse where there has been a change in the decedent's marital status. Va. Code Ann. §20–111.1(A) (Section A). In the event that this provision is pre-empted by federal law, a separate provision of Virginia law, Section D, provides a cause of action rendering the former spouse liable for the principal amount of the proceeds to the party who would have received them were Section A not pre-empted. §20–111.1(D).

   Warren Hillman named then-spouse, respondent Judy Maretta, as the beneficiary of his Federal Employees' Group Life Insurance (FEGLI) policy. After their divorce, he married petitioner Jacqueline Hillman but never changed his named FEGLI beneficiary. After Warren's death, Maretta, still the named beneficiary, filed a claim for the FEGLI proceeds and collected them. Hillman sued in Virginia court, seeking recovery of the proceeds under Section D. Maretta argued in response that Section D is pre-empted by federal law. The parties agreed that Section A is pre-empted. The Virginia Circuit Court found Maretta liable to Hillman under Section D for the FEGLI policy proceeds. The State Supreme Court reversed, concluding that Section D is pre-empted by FEGLIA because it conflicts with the purposes and objectives of Congress.

*Held*: Section D of the Virginia statute is pre-empted by FEGLIA. Pp. 6–15.

(a)  State law is pre-empted "to the extent of any conflict with a federal statute."  *Crosby* v. *National Foreign Trade Council*, 530 U. S. 363, 372.  This case raises the question whether Virginia law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Hines* v. *Davidowitz*, 312 U. S. 52, 67.  Pp. 6–13.

(1) To determine whether a state law conflicts with Congress' purposes and objectives, the nature of the federal interest must first be ascertained.  *Crosby*, 530 U. S., at 372–373.  Two previous cases govern the analysis of the relationship between Section D and FEGLIA here.  In *Wissner* v. *Wissner*, 338 U. S. 655, a California court granted a decedent's widow, who was not the named beneficiary of a policy under the federal National Service Life Insurance Act of 1940 (NSLIA), an interest in the insurance proceeds as community property under state law.  This Court reversed.  Because NSLIA provided that the insured had a right to designate a beneficiary and could change that designation at any time, the Court reasoned that Congress had "spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other."  *Id.*, at 658.  The Court addressed a similar question regarding the federal Servicemen's Group Life Insurance Act of 1965 (SGLIA) in *Ridgway* v. *Ridgway*, 454 U. S. 46.  There, a Maine court imposed a constructive trust on insurance proceeds paid to a servicemember's widow, the named beneficiary, and ordered that they be paid to the decedent's first wife as required by a divorce decree.  Holding the constructive trust pre-empted, the *Ridgway* Court explained that *Wissner* controlled and that SGLIA made clear that "the insured service member possesses the right freely to designate the beneficiary and to alter that choice at any time by communicating the decision in writing to the proper office."  *Id.*, at 56.  Pp. 7–9.

(2) The reasoning in *Wissner* and *Ridgway* applies with equal force here.  NSLIA and SGLIA are strikingly similar to FEGLIA, which creates a scheme that gives highest priority to an insured's designated beneficiary, §8705(a), and which underscores that the employee's "right" of designation "cannot be waived or restricted," 5 CFR §843.205(e).  Section D interferes with this scheme, because it directs that the proceeds actually belong to someone other than the named beneficiary by creating a cause of action for their recovery by a third party.  FEGLIA establishes a clear and predictable procedure for an employee to indicate who the intended beneficiary shall be and evinces Congress' decision to accord federal employees an unfettered freedom of choice in selecting a beneficiary and to ensure the proceeds actually belong to that beneficiary.  This conclusion is confirmed by another provision of FEGLIA, §8705(e), which creates a

Syllabus

limited exception to the order of precedence by allowing proceeds to
be paid to someone other than the named beneficiary, if, and only if,
the requisite documentation is filed with the Government before the
employee's death, so that any departure from the beneficiary desig-
nation is managed within, not outside, the federal system. If States
could make alternative distributions outside the clear procedure
Congress established, §8705(e)'s narrow exception would be trans-
formed into a general license for state law to override FEGLIA.
Pp. 9–13.

  (b) Hillman's additional arguments in support of a different result
are unpersuasive. Pp. 13–15.

283 Va. 34, 722 S. E. 2d 32, affirmed.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and KENNEDY, GINSBURG, BREYER, and KAGAN, JJ., joined, and in
which SCALIA, J., joined as to all but footnote 4. THOMAS, J., and ALITO,
J., filed opinions concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–1221

JACQUELINE HILLMAN, PETITIONER *v.* JUDY A.
MARETTA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
VIRGINIA

[June 3, 2013]

JUSTICE SOTOMAYOR delivered the opinion of the Court.*

The Federal Employees' Group Life Insurance Act of
1954 (FEGLIA), 5 U. S. C. §8701 *et seq.*, establishes a life
insurance program for federal employees. FEGLIA pro-
vides that an employee may designate a beneficiary to
receive the proceeds of his life insurance at the time of his
death. §8705(a). Separately, a Virginia statute addresses
the situation in which an employee's marital status has
changed, but he did not update his beneficiary designation
before his death. Section 20–111.1(D) of the Virginia Code
renders a former spouse liable for insurance proceeds to
whoever would have received them under applicable law,
usually a widow or widower, but for the beneficiary desig-
nation. Va. Code Ann. §20–111.1(D) (Lexis Supp. 2012).
This case presents the question whether the remedy cre-
ated by §20–111.1(D) is pre-empted by FEGLIA and its
implementing regulations. We hold that it is.

———————

*JUSTICE SCALIA joins all but footnote 4 of this opinion.

I

A

In 1954, Congress enacted FEGLIA to "provide low-cost group life insurance to Federal employees." H. R. Rep. No. 2579, 83d Cong., 2d Sess., 1 (1954). The program is administered by the federal Office of Personnel Management (OPM). 5 U. S. C. §8716. Pursuant to the authority granted to it by FEGLIA, OPM entered into a life insurance contract with the Metropolitan Life Insurance Company. See §8709; 5 CFR §870.102 (2013). Individual employees enrolled in the Federal Employees' Group Life Insurance (FEGLI) Program receive coverage through this contract. The program is of substantial size. In 2010, the total amount of FEGLI insurance coverage in force was $824 billion. GAO, Federal Employees' Group Life Insurance: Retirement Benefit and Retained Asset Account Disclosures Could Be Improved 1 (GAO–12–94, 2011).

FEGLIA provides that, upon an employee's death, life insurance benefits are paid in accordance with a specified "order of precedence." 5 U. S. C. §8705(a). The proceeds accrue "[f]irst, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death." *Ibid.* "[I]f there is no designated beneficiary," the benefits are paid "to the widow or widower of the employee." *Ibid.* Absent a widow or widower, the benefits accrue to "the child or children of the employee and descendants of [the] deceased children"; "the parents of the employee" or their survivors; the "executor or administrator of the estate of the employee"; and last, to "other next of kin." *Ibid.*

To be effective, the beneficiary designation and any accompanying revisions to it must be in writing and duly filed with the Government. See *ibid.* ("[A] designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect"). An OPM regulation provides that an employee may

"change [a] beneficiary at any time without the knowledge or consent of the previous beneficiary," and makes clear that "[t]his right cannot be waived or restricted." 5 CFR §870.802(f). Employees are informed of these requirements through materials that OPM disseminates in connection with the program. See, *e.g.,* OPM, FEGLI Program Booklet 21–22 (rev. Aug. 2004) (setting forth the order of precedence and stating that OPM "will pay benefits" "*[f]irst*, to the beneficiary [the employee] designate[s]"). The order of precedence is also described on the form that employees use to designate a beneficiary. See Designation of Beneficiary, FEGLI Program, SF 2823 (rev. Mar. 2011) (Back of Part 2). And the enrollment form advises employees to update their designations if their "[i]ntentions [c]hange" as a result of, for example, "marriage [or] divorce." *Ibid.*

In 1998, Congress amended FEGLIA to create a limited exception to an employee's right of designation. The statute now provides that "[a]ny amount which would otherwise be paid to a person determined under the order of precedence . . . shall be paid (in whole or in part) by [OPM] to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation" or related settlement, but only in the event the "decree, order, or agreement" is received by OPM or the employing agency before the employee's death. 5 U. S. C. §§8705(e)(1)–(2).

FEGLIA also includes an express pre-emption provision. That provision states in relevant part that "[t]he provisions of any contract under [FEGLIA] which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State . . . , which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions." §8709(d)(1).

This case turns on the interaction between these provi-

sions of FEGLIA and a Virginia statute. Section 20–111.1(A) (Section A) of the Virginia Code provides that a divorce or annulment "revoke[s]" a "beneficiary designation contained in a then existing written contract owned by one party that provides for the payment of any death benefit to the other party." A "death benefit" includes "payments under a life insurance contract." §20.111.1(B).

In the event that Section A is pre-empted by federal law, §20–111.1(D) (Section D) of the Virginia Code applies. Section D provides as follows:

> "If [Va. Code Ann. §20–111.1] is preempted by federal law with respect to the payment of any death benefit, a former spouse who, not for value, receives the payment of any death benefit that the former spouse is not entitled to under [§20–111.1] is personally liable for the amount of the payment to the person who would have been entitled to it were [§20.111.1] not preempted."

In other words, where Section A is pre-empted, Section D creates a cause of action rendering a former spouse liable for the principal amount of the insurance proceeds to the person who would have received them had Section A continued in effect.

## B

Warren Hillman (Warren) and respondent Judy Maretta were married. In 1996, Warren named Maretta as the beneficiary of his FEGLI policy. Warren and Maretta divorced in 1998 and, four years later, he married petitioner Jacqueline Hillman. Warren died unexpectedly in 2008. Because Warren had never changed the named beneficiary under his FEGLI policy, it continued to identify Maretta as the beneficiary at the time of his death despite his divorce and subsequent remarriage to Hillman.

Hillman filed a claim for the proceeds of Warren's life

insurance, but the FEGLI administrator informed her that the proceeds would accrue to Maretta, because she had been named as the beneficiary. Maretta filed a claim for the benefits with OPM and collected the FEGLI proceeds in the amount of $124,558.03. App. to Pet. for Cert. 37a.

Hillman then filed a lawsuit in Virginia Circuit Court, arguing that Maretta was liable to her under Section D for the proceeds of her deceased husband's FEGLI policy. The parties agreed that Section A, which directly reallocates the benefits, is pre-empted by FEGLIA. *Id.*, at 36a. Maretta contended that Section D is also pre-empted by federal law and that she should keep the insurance proceeds. The Circuit Court rejected Maretta's argument and granted summary judgment to Hillman, finding Maretta liable to Hillman under Section D for the proceeds of Warren's policy. *Id.*, at 58a.

The Virginia Supreme Court reversed and entered judgment for Maretta. 283 Va. 34, 46, 722 S. E. 2d 32, 38 (2012). The court found that FEGLIA clearly instructed that the insurance proceeds should be paid to a named beneficiary. *Id.,* at 44–46, 722 S. E. 2d, at 36–38. The court reasoned that "Congress did not intend merely for the named beneficiary in a FEGLI policy to receive the proceeds, only then to have them subject to recovery by a third party under state law." *Id.,* at 44, 722 S. E. 2d, at 37. It therefore concluded that Section D is pre-empted by FEGLIA, because it "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.,* at 45, 722 S. E. 2d, at 37 (internal quotation marks omitted).

We granted certiorari, 568 U. S. \_\_\_ (2013), to resolve a conflict among the state and federal courts over whether FEGLIA pre-empts a rule of state law that automatically assigns an interest in the proceeds of a FEGLI policy to a person other than the named beneficiary or grants that

person a right to recover such proceeds.[1]  We now affirm.

## II

Under the Supreme Clause, Congress has the power to pre-empt state law expressly.  See *Brown* v. *Hotel Employees*, 468 U. S. 491, 500–501 (1984).  Although FEGLIA contains an express pre-emption provision, see §8709(d)(1), the court below considered only whether Section D is pre-empted under conflict pre-emption principles.  We limit our analysis here to that holding.  State law is pre-empted "to the extent of any conflict with a federal statute."  *Crosby* v. *National Foreign Trade Council*, 530 U. S. 363, 372 (2000) (citing *Hines* v. *Davidowitz*, 312 U. S. 52, 66–67 (1941)).  Such a conflict occurs when compliance with both federal and state regulations is impossible, *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U. S. 132, 142–143 (1963), or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines*, 312 U. S., at 67.  This case raises a question of purposes and objectives pre-emption.

The regulation of domestic relations is traditionally the domain of state law.  See *In re Burrus*, 136 U. S. 586, 593–594 (1890).  There is therefore a "presumption against pre-emption" of state laws governing domestic relations, *Egelhoff* v. *Egelhoff*, 532 U. S. 141, 151 (2001), and "family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy

––––––––––

[1] Compare, *e.g., Metropolitan Life Ins. Co.* v. *Zaldivar*, 413 F. 3d 119 (CA1 2005) (FEGLIA pre-empted state-law rule); *Metropolitan Life Ins. Co.* v. *Sullivan*, 96 F. 3d 18 (CA2 1996) (*per curiam*) (same); *Metropolitan Life Ins. Co.* v. *McMorris*, 786 F. 2d 379 (CA10 1986) (same); *O'Neal* v. *Gonzalez*, 839 F. 2d 1437 (CA11 1988), with *Hardy* v. *Hardy*, 963 N. E. 2d 470 (Ind. 2012) (not pre-empted); *McCord* v. *Spradling,* 830 So. 2d 1188 (Miss. 2002) (same); *Kidd* v. *Pritzel*, 821 S. W. 2d 566 (Mo. App. 1991) (same).

Clause will demand that state law will be overridden,"
*Hisquierdo* v. *Hisquierdo*, 439 U. S. 572, 581 (1979). But
family law is not entirely insulated from conflict pre-
emption principles, and so we have recognized that state
laws "governing the economic aspects of domestic relations
. . . must give way to clearly conflicting federal enact-
ments." *Ridgway* v. *Ridgway*, 454 U. S. 46, 55 (1981).

A

To determine whether a state law conflicts with Con-
gress' purposes and objectives, we must first ascertain
the nature of the federal interest. *Crosby*, 530 U. S., at
372–373.

Hillman contends that Congress' purpose in enacting
FEGLIA was to advance administrative convenience by
establishing a clear rule to dictate where the Government
should direct insurance proceeds. See Brief for Petitioner
25. There is some force to Hillman's argument that a
significant legislative interest in a large federal program
like FEGLIA is to enable its efficient administration. If
Hillman is correct that administrative convenience was
Congress' only purpose, then there might be no conflict
between Section D and FEGLIA: Section D's cause of
action takes effect only after benefits have been paid, and
so would not necessarily impact the Government's distri-
bution of insurance proceeds. Cf. *Hardy* v. *Hardy*, 963
N. E. 2d 470, 477–478 (Ind. 2012).

For her part, Maretta insists that Congress had a more
substantial purpose in enacting FEGLIA: to ensure that a
duly named beneficiary will receive the insurance pro-
ceeds and be able to make use of them. Brief for Respond-
ent 21–22. If Maretta is correct, then Section D would
directly conflict with that objective, because its cause of
action would take the insurance proceeds away from the
named beneficiary and reallocate them to someone else.
We must therefore determine which understanding of

FEGLIA's purpose is correct.

We do not write on a clean slate. In two previous cases, we considered federal insurance statutes requiring that insurance proceeds be paid to a named beneficiary and held they pre-empted state laws that mandated a different distribution of benefits. The statutes we addressed in these cases are similar to FEGLIA. And the impediments to the federal interests in these prior cases are analogous to the one created by Section D of the Virginia statute. These precedents accordingly govern our analysis of the relationship between Section D and FEGLIA in this case.

In *Wissner* v. *Wissner*, 338 U. S. 655 (1950), we considered whether the National Service Life Insurance Act of 1940 (NSLIA), 54 Stat. 1008, pre-empted a rule of state marital property law. Congress had enacted NSLIA to "affor[d] a uniform and comprehensive system of life insurance for members and veterans of the armed forces of the United States." *Wissner,* 338 U. S., at 658. A California court granted the decedent's widow, who was not the named beneficiary, an interest in the insurance proceeds as community property under state law. *Id.,* at 657.

We reversed, holding that NSLIA pre-empted the widow's state-law action to recover the proceeds. *Id.,* at 658. In pertinent part, NSLIA provided that the insured "'shall have the right to designate the beneficiary or beneficiaries of the insurance [within a designated class], . . . and shall . . . at all times have the right to change the beneficiary or beneficiaries.'" *Ibid.* (quoting 38 U. S. C. §802(g) (1946 ed.)). We reasoned that "Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." 338 U. S., at 658. The California court's decision could not stand, we found, because it "substitute[d] the widow for the mother, who was the beneficiary Congress directed shall receive the insurance money." *Id.,* at 659.

In *Ridgway,* we considered a similar question regarding

the federal Servicemen's Group Life Insurance Act of 1965 (SGLIA), Pub. L. 89–214, 79 Stat. 880, another insurance scheme for members of the armed services. 454 U. S.*,* at 50–53. A Maine court imposed a constructive trust on insurance proceeds paid to a servicemember's widow, who was the named beneficiary, and ordered they be paid to the decedent's first wife as required by the terms of a divorce decree. *Id.,* at 49–50.

In holding the constructive trust pre-empted, we explained that the issue was "controlled by *Wissner*." *Id.,* at 55. As in *Wissner*, the applicable provisions of SGLIA made clear that "the insured service member possesses the right freely to designate the beneficiary and to alter that choice at any time by communicating the decision in writing to the proper office." 454 U. S., at 56 (citing *Wissner*, 338 U. S., at 658). We also noted that SGLIA established an "'order of precedence,'" which provided that the benefits would be first paid to "such 'beneficiary or beneficiaries as the member . . . may have designated by [an appropriately filed] writing received prior to death.'" 454 U. S., at 52 (quoting 38 U. S. C. §770(a) (1976 ed.)). Notwithstanding "some small differences" between SGLIA and NSLIA, we concluded that SGLIA's "unqualified directive to pay the proceeds to the properly designated beneficiary clearly suggest[ed] that no different result was intended by Congress." 454 U. S., at 57.

## B

Our reasoning in *Wissner* and *Ridgway* applies with equal force here. The statutes we considered in these earlier cases are strikingly similar to FEGLIA. Like NSLIA and SGLIA, FEGLIA creates a scheme that gives highest priority to an insured's designated beneficiary. 5 U. S. C. §8705(a). Indeed, FEGLIA includes an "order of precedence" that is nearly identical to the one in SGLIA: Both require that the insurance proceeds be paid first to

the named beneficiary ahead of any other potential recipi-
ent. Compare *ibid.* with 38 U. S. C. §770(a) (1976 ed.)
(now §1970(a) (2006 ed.)). FEGLIA's implementing regu-
lations further underscore that the employee's "right" of
designation "cannot be waived or restricted." 5 CFR
§843.205(e). In FEGLIA, as in these other statutes, Con-
gress "'spok[e] with force and clarity in directing that the
proceeds *belong* to the named beneficiary and no other.'"
*Ridgway*, 454 U. S., at 55 (quoting *Wissner*, 338 U. S., at
658; emphasis added).[2]

Section D interferes with Congress' scheme, because it
directs that the proceeds actually "belong" to someone
other than the named beneficiary by creating a cause of
action for their recovery by a third party. *Ridgway*, 454
U. S., at 55; see Va. Code Ann. §20–111.1(D). It makes no
difference whether state law requires the transfer of the
proceeds, as Section A does, or creates a cause of action,
like Section D, that enables another person to receive the
proceeds upon filing an action in state court. In either
case, state law displaces the beneficiary selected by the
insured in accordance with FEGLIA and places someone
else in her stead. As in *Wissner*, applicable state law
"substitutes the widow" for the "beneficiary Congress
directed shall receive the insurance money," 338 U. S., at
659, and thereby "frustrates the deliberate purpose of
Congress" to ensure that a federal employee's named
beneficiary receives the proceeds. *Ibid.*

One can imagine plausible reasons to favor a different

_____

[2] Hillman points to some textual differences among NSLIA, SGLIA,
and FEGLIA. She suggests, for example, that the provision of NSLIA
enabling the appointment of a beneficiary does not use precisely the
"'same language'" as FEGLIA's order of precedence. Reply Brief 21.
Even if there are "some small differences" in the statutory language,
however, they do not diminish the critical similarity shared by the
three statutes: Each reflects Congress' "unqualified directive" that the
proceeds accrue to a named beneficiary. *Ridgway*, 454 U. S., at 57.

policy. Many employees perhaps neglect to update their beneficiary designations after a change in marital status. As a result, a legislature could have thought that a default rule providing that insurance proceeds accrue to a widow or widower, and not a named beneficiary, would be more likely to align with most people's intentions. Or, similarly, a legislature might have reasonably believed that an employee's will is more reliable evidence of his intent than a beneficiary designation form executed years earlier.

But that is not the judgment Congress made.[3] Rather than draw an inference about an employee's probable intent from a range of sources, Congress established a clear and predictable procedure for an employee to indicate who the intended beneficiary of his life insurance shall be. Like the statutes at issue in *Ridgway* and *Wissner*, FEGLIA evinces Congress' decision to accord federal employees an unfettered "freedom of choice" in selecting the beneficiary of the insurance proceeds and to ensure the proceeds would actually "belong" to that beneficiary. *Ridgway*, 454 U. S., at 56. An employee's ability to name a beneficiary acts as a "guarantee of the complete and full performance of the contract to the exclusion of conflicting claims." *Wissner*, 338 U. S., at 660. With that promise comes the expectation that the insurance proceeds will be paid to the named beneficiary and that the beneficiary can use them.

There is further confirmation that Congress intended

———————

[3] In his concurrence, JUSTICE ALITO argues that one of FEGLIA's purposes is to "effectuat[e] . . . the insured's *expressed intent*" and that evidence beyond an employee's named beneficiary could therefore be relevant in some circumstances to determining that intent. *Post,* at 2–3 (opinion concurring in judgment) (emphasis in original). For the reasons explained, however, that statement of Congress' purpose is incomplete. See *supra,* at 9–10. Congress sought to ensure that an employee's intent would be given effect only through the designation of a beneficiary or through the narrow exceptions specifically provided in the statute, see *infra*, at 12–13.

the insurance proceeds be paid in accordance with FEGLIA's procedures. Section 8705(e)(1) of FEGLIA provides that "[a]ny amount which would otherwise be paid . . . under the order of precedence" shall be paid to another person "if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation." This exception, however, only applies if the "decree, order, or agreement . . . is received, before the date of the covered employee's death, by the employing agency." §8705(e)(2). This provision allows the proceeds to be paid to someone other than the named beneficiary, but if and only if the requisite documentation is filed with the Government, so that any departure from the beneficiary designation is managed within, not outside, the federal system.[4]

We have explained that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus* v. *Glover Constr. Co.*, 446 U. S. 608, 616–617 (1980). Section 8705(e) creates a limited exception to the order of precedence. If States could make alternative distributions outside the clear procedure Congress established, that

---

[4] Congress enacted 5 U. S. C. §8705(e) following federal-court decisions that found FEGLIA to pre-empt state-court constructive trust actions predicated upon divorce decrees. See, *e.g.*, *Gonzalez*, 839 F. 2d, at 1439–1440. Reflecting this backdrop, the House Report noted that "Under current law, . . . divorce decrees . . . do not affect the payment of life insurance proceeds. Instead, when the policyholder dies, the proceeds are paid to the beneficiary designated by the policyholder, if any, or to other individuals as specified by statute." H. R. Rep. No. 105–134, p. 2 (1997). To address the issue raised by these lower court cases, Congress could have amended FEGLIA to allow state law to take precedence over the named beneficiary when there is any conflict with a divorce decree or annulment. But Congress did not do so, and instead described the precise conditions under which a divorce decree could displace an employee's named beneficiary.

would transform this narrow exception into a general license for state law to override FEGLIA. See *TRW Inc.* v. *Andrews*, 534 U. S. 19, 28–29 (2001).[5]

In short, where a beneficiary has been duly named, the insurance proceeds she is owed under FEGLIA cannot be allocated to another person by operation of state law. Section D does exactly that. We therefore agree with the Virginia Supreme Court that it is pre-empted.

## III

We are not persuaded by Hillman's additional arguments in support of a different result.

Hillman contends that *Ridgway* and *Wissner* can be distinguished because, unlike the statutes we considered in those cases, FEGLIA does not include an "anti-attachment provision." Brief for Petitioner 38–41. The anti-attachment provisions in NSLIA and SGLIA were identical, and each broadly prohibited the "attachment, levy, or seizure" of insurance proceeds by any legal process. 38 U. S. C. §454a (1946 ed.) (incorporated by reference in §816); §770(g) (1976 ed.). In *Wissner* and *Ridgway*, we found that the relevant state laws violated these provisions and that this further conflict supported our conclusion that the state laws were pre-empted.

These discussions of the anti-attachment provisions, however, were alternative grounds to support the judgment in each case, and not necessary components of the holdings. See *Ridgway*, 454 U. S., at 60–61 (describing

---

[5] Hillman contends that §8705(e) of FEGLIA indicates that Congress contemplated that the proceeds could be paid to someone other than the named beneficiary and that Section D is consistent with that broad principle. Brief for Petitioner 43. As noted, however, §8705(e) has the opposite implication, because it is framed as a specific exception to the rule that the proceeds accrue in all cases to the named beneficiary. It is not, as Hillman suggests, a general rule authorizing state law to supersede FEGLIA.

separately the anti-attachment provision and noting that the state law "also" conflicted with it); *id.,* at 60 (noting that in *Wissner* we found an "anti-attachment provision . . . as an *independent ground* for the result reached in that case" (emphasis added)); see also *Rose* v. *Rose,* 481 U. S. 619, 631 (1987) (describing *Wissner*'s treatment of the anti-attachment provision as "clearly an alternative holding"). The absence of an anti-attachment provision in FEGLIA does not render *Ridgway*'s and *Wissner*'s primary holdings any less applicable here.

Next, Hillman suggests that *Wissner* and *Ridgway* can be set aside because FEGLIA contains an express pre-emption provision and that conflict pre-emption principles ordinarily do not apply when that is so. Brief for Petitioner 45–47. As noted, the court below did not pass on the parties' express pre-emption arguments, and thus we similarly address only conflict pre-emption. See *supra,* at 7. And we need not consider whether Section D is expressly pre-empted, because Hillman is incorrect to suggest that FEGLIA's express pre-emption provision renders conflict pre-emption inapplicable. Rather, we have made clear that the existence of a separate pre-emption provision "'does *not* bar the ordinary working of conflict pre-emption principles.'" *Sprietsma* v. *Mercury Marine,* 537 U. S. 51, 65 (2002) (internal quotation marks omitted); see *Arizona* v. *United States,* 567 U. S. ___, ___ (2012) (slip op., at 14).

Hillman further argues that *Ridgway* is not controlling because a provision of FEGLIA specifically authorizes an employee to assign a FEGLI policy, whereas SGLIA's implementing regulations prohibit such an assignment. See 5 U. S. C. §8706(f)(1) (2006 ed., Supp. V); 38 CFR §9.6 (2012). The premise of Hillman's argument is that FEGLIA's assignment provision suggests that an employee has a less substantial interest in who ultimately receives the proceeds. But an employee's ability to assign a

FEGLI policy in fact highlights Congress' intent to allow an employee wide latitude to determine how the proceeds should be paid, whether that is to a named beneficiary that he selects, or indirectly through the assignment of the policy itself to someone else.

Finally, Hillman attempts to distinguish *Ridgway* and *Wissner* because Congress enacted the statutes at issue in those cases with the goal of improving military morale. Brief for Petitioner 47–51. Congress' aim of increasing the morale of the armed services, however, was not the basis of our pre-emption analysis in either case. See *Wissner*, 338 U. S., at 658–659; *Ridgway*, 454 U. S., at 53–56.

\*    \*    \*

Section D is in direct conflict with FEGLIA because it interferes with Congress' objective that insurance proceeds belong to the named beneficiary. Accordingly, we hold that Section D is pre-empted by federal law. The judgment of the Virginia Supreme Court is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–1221

_____

## JACQUELINE HILLMAN, PETITIONER *v.* JUDY A. MARETTA

### ON WRIT OF CERTIORARI TO THE SUPREME COURT OF VIRGINIA

[June 3, 2013]

JUSTICE THOMAS, concurring in the judgment.

The Court correctly concludes that §20–111.1(D) of the Virginia Code (Section D) is pre-empted by the Federal Employees' Group Life Insurance Act of 1954 (FEGLIA), 5 U. S. C. §8701 *et seq.* But I cannot join the "purposes and objectives" framework that the majority uses to reach this conclusion. *Ante,* at 6. That framework is an illegitimate basis for finding the pre-emption of state law, see *Wyeth* v. *Levine*, 555 U. S. 555, 583 (2009) (THOMAS, J., concurring in judgment), and is entirely unnecessary to the result in this case, because the ordinary meanings of FEGLIA and Section D directly conflict. Accordingly, I concur only in the judgment.

The Supremacy Clause establishes that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary nothwithstanding." Art. VI, cl. 2. "Where state and federal law 'directly conflict,' state law must give way." *PLIVA, Inc.* v. *Mensing*, 564 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 11) (quoting *Wyeth*, 555 U. S., at 583). As I have noted before, courts assessing whether state and federal law conflict should not engage in a freewheeling inquiry into whether state law undermines supposed federal purposes and objectives. *Id.*, at 588. Such an approach looks beyond the text of enacted federal law and thereby permits the Fed-

eral Government to displace state law without satisfying an essential precondition to pre-emption, namely, the Bicameral and Presentment Clause. *Id.*, at 586–587. Preemption analysis should, therefore, instead hew closely to the text and structure of the provisions at issue, and a court should find pre-emption only when the "'ordinary meaning'" of duly enacted federal law "effectively repeal[s] contrary state law." *PLIVA, supra,* at ___–___ (slip op., at 14–15, 17).

Applying these principles, it is clear that the ordinary meaning of FEGLIA directly conflicts with Section D. FEGLIA provides that life insurance benefits are paid according to a particular "order of precedence." 5 U. S. C. §8705(a); see also 5 CFR §870.801(a) (2013). The benefits are distributed first to "the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death." 5 U. S. C. §8705(a). If the insured fails to designate a beneficiary, FEGLIA provides a specific order in which benefits must be distributed: next to "the widow or widower of the employee"; absent a widow or widower, to "the child or children of the employee and descendants of [the] deceased children"; and so on. *Ibid.*; *ante*, at 2. The insured has the right to change his beneficiary designation "at any time without the knowledge or consent of the previous beneficiary," and "[t]his right cannot be waived or restricted." 5 CFR §870.802(f).

Section D directly conflicts with this statutory scheme, because it nullifies the insured's statutory right to designate a beneficiary. The right to designate a beneficiary encompasses a corresponding right in the named beneficiary not only to receive the proceeds, but also to retain them. Indeed, the "right" to designate a beneficiary—as well as the term "beneficiary" itself—would be meaningless if the only effect of a designation were to saddle the nominal beneficiary with liability under state law for the full value of the proceeds. But Section D accomplishes

exactly that: It transforms the designated beneficiary into a defendant in state court, a defendant who is now liable to the individual the State has designated as the true beneficiary. While Hillman does not insist that the insurer should have mailed the check to her (as opposed to Maretta, the designated beneficiary), Section D requires, in effect, this very result. See *ante,* at 10 ("[Section D] displaces the beneficiary selected by the insured in accordance with FEGLIA and places someone else in her stead"). If the right to designate a beneficiary means anything, we must conclude that Section D directly conflicts with FEGLIA's order of precedence.

The direct conflict between Section D and FEGLIA is also evident in the fact that Section D's only function is to accomplish what Section A would have achieved, had Section A not been pre-empted. Section A provides that,

> "upon the entry of a decree of annulment or divorce from the bond of matrimony . . . , any revocable beneficiary designation contained in a then existing written contract owned by one party that provides for the payment of any death benefit to the other party is revoked. A death benefit prevented from passing to a former spouse by this section shall be paid as if the former spouse had predeceased the decedent." Va. Code Ann. §20–111.1(A) (Lexis Cum. Supp. 2012).

Both parties agree that FEGLIA pre-empts this provision. Brief for Petitioner 4–5; Brief for Respondent 2; see also 283 Va. 34, 52, 722 S. E. 2d 32, 35 (2012). And for good reason: if an insured has designated his former spouse as the beneficiary of his life insurance policy, Section A purports to "revok[e]" that designation in the event of divorce or annulment. By purporting to so alter FEGLIA's statutory order of precedence, Section A is clearly pre-empted by federal law. Tellingly, it is precisely in this context— and only in this context—that Section D operates. See

§20–111.1(D). Of course, Section D does not preclude the direct payment of benefits to the designated beneficiary; however, it accomplishes the same prohibited result by transforming the designated party into little more than a passthrough for the true beneficiary. This cannot be squared with FEGLIA. Consequently, Section D must yield.

*     *     *

For these reasons, I agree with the Court's conclusion that Section D is pre-empted and, therefore, concur in the judgment.

# SUPREME COURT OF THE UNITED STATES

---

No. 11–1221

---

## JACQUELINE HILLMAN, PETITIONER *v.* JUDY A. MARETTA

### ON WRIT OF CERTIORARI TO THE SUPREME COURT OF VIRGINIA

[June 3, 2013]

JUSTICE ALITO, concurring in the judgment.

I concur in the judgment. Because one of the purposes of the Federal Employees' Group Life Insurance Act of 1954 (FEGLIA) is to implement the expressed wishes of the insured, I would hold that a state law is pre-empted if it effectively overrides an insured's actual, articulated choice of beneficiary. The challenged provision of Virginia law has that effect.

By way of background, Va. Code Ann. §20–111.1(A) (Lexis Supp. 2012) provides that the entry of a divorce decree automatically revokes an insured's prior designation of his or her former spouse as the beneficiary of the policy. And where, as in this case, the insured remarries after the divorce and dies before making a new FEGLIA designation, the proceeds, under 5 U. S. C. §8705(a), are automatically paid to the insured's former spouse. Under the provision of Virginia law at issue here, the surviving spouse is entitled to recover those proceeds from the former spouse. See Va. Code Ann. §20–111.1(D). Section 20–111.1(D) apparently requires this result even if the insured manifests a clear contrary intent, such as by providing specifically in a recent will that the proceeds are to go to another party—for example, the insured's children by the former marriage. Because §20–111.1(D) overrides the insured's express intent (whether that intent is expressed

via a beneficiary designation or through other reliable means), I agree that it is pre-empted by FEGLIA.

Interpreted in light of our prior decisions in *Wissner* v. *Wissner*, 338 U. S. 655 (1950), and *Ridgway* v. *Ridgway*, 454 U. S. 46 (1981), FEGLIA seems to me to have two primary purposes or objectives.

The first is administrative convenience. It is easier for an insurance administrator to pay insurance proceeds to the person whom the insured has designated on a specified form without having to consider claims made by others based on some other ground. But §20–111.1(D) does not affect the initial payment of proceeds. It operates *after* the funds are received by the designated beneficiary, and it thus causes no inconvenience for those who administer the payment of FEGLIA proceeds.

The second purpose or objective is the effectuation of the insured's *expressed* intent above all other considerations. That was the basis for the decisions in *Wissner* and *Ridgway,* as I understand them. In both cases, there was a conflict between a person whom the insured had designated as his beneficiary and another person whose claim to the proceeds was not based on the insured's expressed intent, and in both cases, the Court held in favor of the designated beneficiary.

The present case bears a similarity to *Wissner* and *Ridgway* in that petitioner's claim depends upon a state statute that automatically alters the ultimate recipient of a divorced employee's insurance proceeds. To be sure, Virginia's provision may well reflect the *unexpressed* preferences of the majority of insureds whose situations are similar to that of the insured in this case—that is, individuals who, after divorce and remarriage, fail to change a prior designation of a former spouse as the beneficiary of the policy. But FEGLIA prioritizes the insured's *expressed* intent. And it is telling that, on petitioner's theory, she would still be entitled to the insurance pro-

ceeds even if, for example, the insured had died shortly after executing a new will leaving those proceeds to someone else. This shows that her claim is based on something other than a manifestation of the insured's intent. Because §20–111.1(D) operates as a blunt tool to override the insured's express declaration of his or her intent, it conflicts with FEGLIA's purpose of prioritizing an insured's articulated wishes above all other considerations.

In affirming the decision below, the Court goes well beyond what is necessary and opines that the party designated as the beneficiary under a FEGLIA policy must be allowed to keep the insurance proceeds even if the insured's contrary and expressed intent is indisputable—for example, when the insured writes a postdivorce will specifically leaving the proceeds to someone else. See *ante*, at 11. The Court's explanation is as follows: "Congress sought to ensure that an employee's intent would be given effect only through the designation of a beneficiary or through the narrow exceptions specifically provided in the statute." *Ibid.*, n. 3. In other words, Congress wanted the designated beneficiary—rather than the person named in a later will—to keep the proceeds because Congress wanted the named beneficiary to keep the proceeds. Needless the say, this circular reasoning does not explain *why* Congress might have wanted the designated beneficiary to keep the proceeds even when that is indisputably contrary to the insured's expressed wishes at the time of death. I am doubtful that any purpose or objective of FEGLIA would be honored by such a holding, but it is not necessary to resolve that question in this case.

For these reasons, I concur in the judgment.