IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,904

STATE OF KANSAS,
*Appellee*,

v.

DONALDO MORALES,
*Appellant*.


SYLLABUS BY THE COURT


Defendant's prosecution for identity theft and making false information for using another person's Social Security number to obtain employment was expressly preempted by the federal Immigration Reform and Control Act of 1986.


Review of the judgment of the Court of Appeals in an unpublished opinion filed January 8, 2016. Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed September 8, 2017. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.


The opinion of the court was delivered by


BEIER, J.: This companion case to *State v. Garcia*, 306 Kan. __, __ P.3d __ (No. 112,502, this day decided), and *State v. Ochoa-Lara*, 306 Kan. __, __ P.3d __ (No.

1

112,322, this day decided), involves defendant Donaldo Morales' convictions on one count of identity theft and two counts of making a false information.

The State's basis for the charges was Morales' use of another person's Social Security number to obtain restaurant employment. Morales was convicted after a bench trial. A panel of the Court of Appeals affirmed Morales' convictions in an unpublished opinion. See *State v. Morales*, No. 111,904, 2016 WL 97848 (2016).

Morales successfully petitioned this court for review of two of the three issues he raised in the Court of Appeals: (1) whether the evidence of his intent to defraud was sufficient, and (2) whether the Immigration Reform and Control Act of 1986 (IRCA) preempted the prosecution. Because we decide that Morales' convictions must be reversed and the case dismissed because the prosecution based on the Social Security number was expressly preempted, we do not reach Morales' sufficiency issue.

FACTUAL AND PROCEDURAL HISTORY

On October 1, 2010, Morales completed an employment application seeking employment at a Jose Pepper's restaurant in Johnson County. On the application, Morales provided a Social Security number. Morales also provided the restaurant with a permanent resident card and a Social Security card as proof of his identity. The number on the Social Security card matched the number he provided on the application. As part of the hiring process, Morales completed a federal I-9 form and W-4 and K-4 forms. He provided the same Social Security number on each form.

In 2012, Special Agent Joseph Espinosa of the Social Security Office of the Inspector General learned that a person might be working at Jose Pepper's under an

2

incorrect Social Security number. Espinosa's investigation determined that the Social Security number Morales had provided belonged to someone else.

Initially the State charged Morales with four counts—one for identity theft and one for making a false information through each of the three forms, the I-9, the W-4, and the K-4.

Morales filed a motion to dismiss the I-9 and the W-4 counts, arguing that the State's pursuit of those two counts was preempted by IRCA. At a hearing on the motion, the State agreed that the I-9 count should be dismissed. Morales' counsel argued that the W-4 fell under the "same . . . umbrella that [the] I-9 does." The district judge disagreed, "With respect to the W-4, I think that is more . . . akin to the [S]ocial [S]ecurity number than it is to something specifically related to immigration as addressed in the *State v. Arizona* case."

Morales testified at trial that he had purchased the Social Security number he used in the Jose Pepper's hiring process from someone in a park in 2002. He said he obtained the number so that he could work and never used it for any other purpose. He confirmed that he completed the I-9, W-4, and K-4 using the number and acknowledged that he was paid for the work he did at Jose Pepper's.

Jody Sight, the director of human resources for the restaurant, described the employment application process. Applicants are required to fill out an application and do an interview with an on-site manager. If the individual is hired, he or she is brought back for orientation. During orientation, a new hire is required to complete employment paperwork, including filling out I-9, W-4, and K-4 forms.

Sherri Ann Miller, a risk and payroll manager for Jose Pepper's, provided Morales with the I-9, W-4, and K-4 forms to fill out. She also photocopied the permanent resident card and Social Security card Morales provided. Miller testified that an applicant would not be employed if he or she did not complete the W-4 and K-4 forms. Sight testified that a person who did not supply a Social Security number could not be entered into the Jose Pepper's payroll system.

When the district judge found Morales guilty, he stated:

"Okay. The Court is going to find that the Defendant did present to Jose Pepper's the five exhibits that were received into evidence.

"The five exhibits are—Three of them are very important, because they're social security number, W-4, and the other social security—the employment document.

"Clearly, he knew that you don't go to a park to buy government documents. That's not where we typically go to find those. He knows that.

"That's why he didn't file taxes, because he knew that he'd get in trouble.

"The elements are that he defrauded.

"It doesn't say who he has to defraud.

"The Court is going to find . . . the Defendant guilty . . . .

. . . .

"I also think you can defraud your employer, because they think that you're a legal citizen.

4

"They could get penalties by hiring people that are not documented individuals.

"So I mean the elements are met.

"The crime has been . . . clearly presented.

"There's absolutely no doubt in my mind that he presented these documents for the reason that he could get a job.

"What's always a stretch is when you find somebody who has been here twenty-four years. He's worked. He's paid taxes. He doesn't get the benefit.

"I don't know if he would have gotten money back or not.

"But one thing we do know is that he's putting money into the kitty that will never be taken out at a time when we need more money in the kitty. He's putting money into [S]ocial [S]ecurity that he'll never be able to draw out.

"So it's not like he stole money from the government.

"He wanted to work.

"He did work.

"He has been here twenty-four years.

"Three of his kids were born here.

"He has a legal [S]ocial [S]ecurity number now.

"This isn't a case of equity.

". . . I can't find him not guilty.

5

"I'm finding him guilty."

Morales filed two motions for a new trial. In the first, he again argued that the W-4 count of making a false information should have been dismissed. In the second, he argued that the State did not present sufficient evidence of his intent to defraud. The district judge denied Morales' motions, sentenced him to concurrent 7-month sentences on each count, and granted him 18 months' probation.

DISCUSSION

Our decision today in *Garcia*, 306 Kan. at __, slip op. at 19, holds that State prosecutions such as the one in this case are expressly preempted by IRCA. Section §1324a(b)(5) of Title 8 of the United States Code (2012) provides that a federal I-9 form for employment verification "and any information contained in" such a form "may not be used for purposes other than for enforcement of" federal immigration law and certain federal criminal statutes. This State prosecution for identity theft and making a false information relied on the Social Security number Morales included in the I-9, as well as his employment application and the W-4 and K-4, to ensure employment eligibility under federal law. Our *Garcia* holding controls the outcome of this case and compels a decision in Morales' favor, reversing all of his convictions.

We pause briefly, however, to address preservation of the preemption issue in the circumstances of this case.

Morales advanced an IRCA preemption challenge in the district court through his pretrial motion to dismiss and his posttrial motion for new trial, although the motions dealt specifically with the making a false information count based on the Social Security

6

number used in Morales' W-4 form and not the identity theft count or the making a false information count based on the K-4 form.

As a general matter, a court is not limited in its legal analysis to only the preemption theories advanced by a party such as Morales. See *Garcia*, 306 Kan. at __, slip op. at 10 (citing *Hillman v. Maretta*, 569 U.S. __, 133 S. Ct. 1943, 1954, 186 L. Ed. 2d 43 [2013] [presence of express preemption clause does not necessarily end court's preemption inquiry]; *Geier v. American Honda Motor Co.*, 529 U.S. 861, 869, 120 S. Ct. 1913, 146 L. Ed. 2d 914 [2000] [express preemption provision does not bar ordinary working of conflict preemption principles]; *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. __, 136 S. Ct. 1288, 1301, 194 L. Ed. 2d 414 [2016] [Thomas, J., concurring in part and concurring in the judgment] [state law could have been preempted "based on the statute alone"; majority unnecessarily relies on principles of implied preemption]; *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 912, 914-15 [10th Cir. 2016], *petition for cert. filed* June 5, 2017 [facial, as-applied preemption claims legal in nature; judicial estoppel doctrine does not apply to limit party to label first attached to challenge; labels parties attach to claims are not determinative]). Compare *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 109, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992) (O'Connor, J., plurality) (state law impliedly preempted by Occupational Safety and Health Act), with *Gade*, 505 U.S. at 109-14 (Kennedy, J., concurring in part and concurring in judgment) (would have found state law expressly preempted). In *Garcia* itself, for example, defense counsel emphasized field preemption rather than express preemption at oral argument before this court. But our decision ultimately relied upon IRCA's express preemption clause. *Garcia*, 306 Kan. at __, slip op. at 19.

In addition, and perhaps most pertinent here, this court may look past a weakness in preservation in certain situations, including when the dispositive issue is one of law and when justice requires a decision on the merits. See *State v. Swint*, 302 Kan. 326, 335,

352 P.3d 1014 (2015). The existence of preemption is an issue of law. See *Miami Cty. Bd. of Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294, 255 P.3d 1186 (2011). And granting relief to Morales from one conviction based on his use of the Social Security number covered by 8 U.S.C. § 1324a(b)(5)'s express preemption clause without granting him the same relief on his two other convictions—for identity theft and for making a false information based on the K-4—covered by the same clause would obviously be illogical and unjust.

CONCLUSION

In reliance on *Garcia*, 306 Kan. at __, slip op. at 19, we reverse defendant Donaldo Morales' convictions on one count of identity theft and two counts of making a false information. His prosecution based on his use of a Social Security number belonging to another person for employment was expressly preempted by 8 U.S.C. § 1324a(b)(5).

JOHNSON, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

\* \* \*

LUCKERT, J., concurring:  I concur in the majority's holding that 8 U.S.C. § 1324a(b)(5) (2012) preempts the prosecution of Donaldo Morales for identity theft under the circumstances of this case. But I reach this holding through a different

---

[1]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case No. 111,904 vice Justice Johnson under the authority vested in the Supreme Court by K.S.A. 20-2616.

analytical path than the one used by the majority. I respectfully disagree with the majority's conclusion that express preemption applies, although I would nevertheless hold that Kansas' identity theft statute intrudes into a field wholly occupied by federal law. I would further hold that a conflict exists between the immigration policy established by Congress and Kansas' identity theft statute when it is applied in a case, as here, that is dependent upon the use of information derived from the employment verification process established by the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, and the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (2012). In other words, I would apply the doctrines of field and conflict preemption, rather than express preemption for the reasons more fully discussed in my concurring opinion in *State v. Garcia*, 306 Kan.___, ___ P.3d ___ (No. 112,502, this day decided), slip op. at ___.

* * *

BILES, J., dissenting:  Consistent with my position in *State v. Garcia*, 306 Kan.___, ___ P.3d ___ (No. 112,502, this day decided), slip op. at 24, I respectfully dissent from the majority's result and reasoning.

* * *

STEGALL, J., dissenting:  Consistent with my position in *State v. Garcia*, 306 Kan.___, ___ P.3d ___ (No. 112,502, this day decided), slip op. at 26, I respectfully dissent from the majority's result and reasoning.