Filed 11/30/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re the Marriage of PATRICK J. and ALICJA STEINER. | |
| | D071155 |
| MARY FURMAN, as Trustee, etc., | |
| Respondent, | (Super. Ct. No. DN173167) |
| v. | |
| ALICJA SOCZEWKO STEINER, | |
| Appellant. | |


APPEAL from an order of the Superior Court of San Diego County,

Thomas Ashworth III, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Affirmed.

Stephen Temko for Appellant.

Franklin Soto, Joshua D. Franklin and Cheryl D. Soto for Respondent.

# I

# INTRODUCTION

As part of a status-only dissolution judgment (judgment), Patrick J. Steiner (Husband) and Alicja Soczewko Steiner (Wife), stipulated to an order requiring Husband, then an active duty service member, to maintain Wife as the beneficiary of all of Husband's current active duty survivor and/or death benefits pending further court order (stipulated order). Notwithstanding the stipulated order, Husband changed the beneficiary of his life insurance policy to Husband's sister, Mary Furman, who received the policy proceeds upon Husband's death. The court subsequently found applicable federal law preempted the stipulated order and Furman was entitled to the policy proceeds. Wife appeals, contending federal law does not preempt the stipulated order or, alternatively, the fraud exception to federal preemption applies. We conclude to the contrary on both points and affirm the order.

# II

# BACKGROUND

Husband was an active duty military service member and had a group life insurance policy (policy) issued under the Servicemen's Group Life Insurance Act of 1965 (see 38 U.S.C. § 1965 et seq.; the SGLIA). The policy provided a $400,000 death benefit. (38 U.S.C. § 1967, subd. (a)(3)(A)(i).)

Six months after the court issued the judgment with the stipulated order, Husband changed the beneficiary of the policy to Furman. Five months later, the court appointed

2

Furman to be the guardian ad litem for Husband, who was terminally ill. Three months after Furman's appointment, Husband died.

Four or five days before Husband's death, Furman learned Husband had named her as the policy beneficiary. She submitted a claim for and received the policy proceeds.

A few months later, the court substituted Furman into the case as Husband's successor in interest. The court subsequently ordered the policy proceeds placed into trust accounts.

Furman submitted a request for an order granting her entitlement to the policy proceeds. The court granted the request, finding the SGLIA and its implementing regulations (see 38 C.F.R. § 9.1 et seq.) allowed Husband to change the policy beneficiary at any time without notice to or the consent of Wife. The court further found the SGLIA preempted contrary state law, including contrary provisions of the Family Code. Consequently, the court vacated its order placing the policy proceeds into trust accounts and directed the proceeds be returned to Furman.

III

DISCUSSION

A

Under the Supremacy Clause of the United States Constitution (U.S. Const., art. VI, cl. 2), "[s]tate law is pre-empted 'to the extent of any conflict with a federal statute.' [Citations.] Such a conflict occurs when compliance with both federal and state regulations is impossible, [citation], or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'

3

[citation]." (*Hillman v. Maretta* (2013) 569 U.S. 483 [133 S.Ct. 1943, 1949–1950, 186 L.Ed.2d 43] (*Hillman*).) A necessary consequence of the Supremacy Clause is that "a state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments." (*Ridgway v. Ridgway* (1981) 454 U.S. 46, 55, [102 S.Ct. 49, 70 L.Ed.2d 39] (*Ridgway*); *Hillman, supra*, 133 S.Ct. at p. 1950.)

The federal enactment at issue in this appeal, the SGLIA, establishes an order of precedence for identifying policy beneficiaries and gives first priority to the beneficiary or beneficiaries identified by the service member in writing before the service member's death. (38 U.S.C § 1970, subd. (a); *Ridgway, supra*, 454 U.S. at p. 52.) The SGLIA's implementing regulations allow a service member to change the named beneficiary "at any time and without the knowledge or consent of the previous beneficiary." (38 C.F.R. § 9.4, subd. (b).)

In addition, the SGLIA exempts policy proceeds from creditor claims and precludes the proceeds from being attached, levied, or seized "by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." (38 U.S.C. § 1970, subd. (g); *Ridgway, supra*, 454 U.S. at pp. 52–53.) The SGLIA's implementing regulations also prohibit any assignment of the proceeds. (38 C.F.R. § 9.6.)

Like comparable federal enactments, the SGLIA evinces Congress's intent to accord service members "an unfettered 'freedom of choice' in selecting the beneficiary of the insurance proceeds and to ensure the proceeds would actually 'belong' to that

4

beneficiary." (*Hillman*, *supra*, 133 S.Ct. at pp. 1952–1953, citing *Ridgway*, *supra*, 454 U.S. at p. 56.)  A service member's "ability to name a beneficiary acts as a 'guarantee of the complete and full performance of the contract to the exclusion of conflicting claims.' [Citation.]  With that promise comes the expectation that the insurance proceeds will be paid to the named beneficiary and that the beneficiary can use them."  (*Hillman*, 133 S.Ct. at p. 1953.)  Consequently, "where a beneficiary has been duly named, the insurance proceeds she is owed under [the SGLIA] cannot be allocated to another person by operation of state law."  (*Ibid*.)

B

Nonetheless, Wife would have us allocate the policy proceeds to her, arguing the stipulated order was merely an act in excess of the court's jurisdiction not subject to federal conflict preemption.  For this argument, Wife relies principally on *In re Marriage of Mansell* (1989) 217 Cal.App.3d 219 (*Mansell*).  *Mansell* held federal conflict preemption did not render a long-final dissolution judgment incorporating a stipulated property agreement void for want of subject matter jurisdiction such that the superior court was required to grant a motion to modify the judgment.  (*Id.* at pp. 223–225, 227–229.)  As the instant case does not involve a final judgment dividing the parties' community property or a motion to modify such a judgment, *Mansell* provides scant guidance for resolving Wife's appeal.  *Mansell* is helpful only in affirming that the existence of conflicting federal and state law does not divest a state court of subject matter jurisdiction.  Rather, it obliges the state court to apply the federal law instead of the state law.  (*Mansell*, *supra*, at pp. 228–229.)

5

Applying federal law here, we are compelled to conclude Husband possessed the right under the SGLIA "freely to designate the beneficiary and to alter that choice at any time by communicating the decision in writing to the proper office." (*Ridgway*, *supra*, 454 U.S. at p. 56.) "[I]t appropriately may be said: 'Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other.' " (*Ibid.*)

While not laudable, the fact Husband violated the stipulated order does not mandate a different outcome. The SGLIA's anti-attachment provision " 'ensures that the benefits actually reach the beneficiary. It pre-empts all state law that stands in its way. It protects the benefits from legal process "[notwithstanding] any other law ... of any State" … . It prevents the vagaries of state law from disrupting the national scheme, and guarantees a national uniformity that enhances the effectiveness of congressional policy.' " (*Ridgway*, *supra*, 454 U.S. at p. 61.) As the anti-attachment provision applies to claims based on property settlement agreements (*ibid.*), we cannot discern any reason why the provision would not also apply to the stipulated order.

C

Alternatively, Wife would have us allocate the policy proceeds to her because Husband and then Furman, as Husband's guardian ad litem, breached their fiduciary duty and committed constructive fraud by not notifying Wife of the beneficiary change. Federal preemption does not shield fraud, or breach of trust tantamount to fraud, to the extent the fraud is intended to divest Wife of her own property or community property. (*Ridgway*, *supra*, 454 U.S. at p. 59.) However, under federal law, Husband's SGLIA

6

policy does not fall into either category. "Federal law and federal regulations bestow upon the service member an absolute right to designate the policy beneficiary. That right is personal to the member alone. It is not a shared asset subject to the interests of another, as is community property." (*Id*. at pp. 59–60.) Husband "had the power to create and change a beneficiary interest in his SGLIA insurance. By exercising that power, he hardly can be said to have committed fraud." (*Id*. at p. 60.) If Husband did not commit fraud by making the beneficiary change, it is difficult to conclude how Husband or Furman could have committed fraud by failing to apprise Wife of the change. This is particularly so since federal law expressly allowed Husband to make the beneficiary change without Wife's knowledge or consent, Furman only learned of the beneficiary change a few days before Husband's death, and Wife has not identified any authority not subject to federal preemption that would have allowed the court to compel Husband to change the beneficiary back to Wife.[1]

---

[1]    To the extent the court may have been able to and may still be able to devise an offsetting remedy, a point we have no occasion to consider in this appeal, Wife acknowledges such a remedy would likely be detrimental to her children, who are the sole beneficiaries of Husband's estate.

IV

DISPOSITION

The order is affirmed.  Furman is awarded her appeal costs.


McCONNELL, P. J.

WE CONCUR:


BENKE, J.


IRION, J.