# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 8, 2001 Session

## JANET DIANA GOODART v. KAMALIN  D. KAZMAR-GRICE

**A Direct Appeal from the Chancery Court for Stewart County**
**No. 00-9-222      The Honorable Leonard Martin, Judge**

---

### No. M2001-00663-COA-R3-CV - Filed February 14, 2002

---

Former wife and children of decedent sued in the chancery court to enroll a foreign decree of divorce and, *inter alia*, to impose a constructive trust on proceeds of a Servicemen's Group Life Insurance policy payable to the decedent widow after the decedent prior to his death changed the policy beneficiary contrary to a marital dissolution agreement and final decree of divorce. The trial court granted summary judgment in favor of decedent widow. Former wife appealed. We affirm.

### Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Raymond F. Runyon, Clarksville, For Appellant, Janet Diana Goodart

Mark A. Rassas, Julia P. North, Clarksville, For Appellee, Kamalin D. Kazmar-Grice

### OPINION

In 1997, Plaintiff Janet Goodart ("Ms. Goodart") and Mark Grice ("Mr. Grice") were divorced in Hawaii. There are two children from this marriage and Mr. Grice had two children from a previous marriage. Mr. Grice committed suicide on May 3, 2000. At the time of his death, he was married to Defendant Kamalin Kazmar-Grice ("Ms. Kazmar-Grice"). There were, apparently, no children produced of Mr. Grice's last marriage.

Ms. Goodart alleges that, under the terms of the Hawaiian divorce decree, Mr. Grice was required to maintain a Service members' Group Life Insurance ("SGLI") policy[1] of not less than

---

[1]
> In order to make life insurance coverage available to members of the uniformed services on active duty, particularly in combat zones, Congress in 1965 enacted the SGLIA  The impetus for the legislation was the escalating level of

(continued...)

$50,000, with the couple's two children as sole beneficiaries, and an additional life insurance policy of not less than $200,000, again with the couple's two children as sole beneficiaries. The parties' divorce decree provides, in relevant part:

> c) Life Insurance. Plaintiff and Defendant shall each maintain in full force and effect, a life insurance policy on their lives held with SGLI in the face amount of not less than $50,000.00, naming the parties' minor children as the only beneficiaries thereunder. Provided further, Defendant shall maintain unencumbered in full force and effect, an additional term life insurance policy on his life in the face amount of not less than $200,000.00, naming said minor children as the only beneficiaries thereunder.
>
> In no event shall Plaintiff and Defendant fail to maintain said life insurance policies. Neither shall Plaintiff or Defendant borrow against said policies, or allow said policies to diminish in value. Plaintiff and Defendant shall take any and all actions necessary with his or her insuring company to ensure that the other party is provided direct notice from said insurer of any past due premiums or any change of beneficiaries requested by either of them.
>
> This obligation shall continue so long as the parties, or either of them, are obligated to support the children and/or to pay the children's higher education expenses or any portion thereof.

In spite of this provision, Ms. Goodart alleges that on the same date as their divorce was entered, Mr. Grice changed the beneficiary on the SGLI policy to his father and then, upon his remarriage, to Ms. Kazmar-Grice. At his death, Mr. Grice's SGLI policy allegedly totaled at least $200,000. There is no indication that Mr. Grice ever took out another policy.

On June 8, 2000, Ms. Goodart filed an action entitled, "Petition to Enroll Foreign Decree, to Amend to Add Additional Parties, to Seek the Imposition of a Constructive Trust on Proceeds of Life Insurance, and for Damages Stemming from Interference with a Contract" in Stewart County Chancery Court. Ms. Goodart named Ms. Kazmar-Grice as the Respondent in this action. On July 26, 2000, Ms. Kazmar-Grice moved for summary judgment, and on December 7, 2000, Ms. Goodart filed an answer and cross-motion for summary judgment in this action.

---

[1](...continued)

> hostilities and casualties in the then ongoing Vietnam conflict; this had prompted private commercial insurers to restrict coverage for service members. . . .under the SGLIA, the Government is the policyholder, rather than the insurer. The Administrator has contracted with petitioner Prudential Insurance Company of America, which now serves as the primary insurer under the SGLIA and which operates, under Veterans' Administration supervision and pursuant to *38 U. S. C. § 766*(b), the Office of Servicemen's Group Life Insurance in Newark, N. J.

*Ridgway v. Ridgway*, 454, U.S. 46, 50-51 (1981) (citations and footnotes omitted).

Following a December 13, 2000 hearing on the parties' motions, the trial court granted Ms. Kazmar-Grice's motion for summary judgment and denied Ms. Goodart's. A final order was entered on January 11, 2001, in which the Chancellor found that the United States Supreme Court case of ***Ridgway v. Ridgway***, 454, U.S. 46 (1981), was controlling and that Mark William Grice was free to designate his wife, Kamalin D. Kazmar-Grice as the beneficiary of his SGLI policy, "despite the decree of divorce from the State of Hawaii."

Ms. Goodart appeals and presents the following issue for review: Whether the trial court erred in granting summary judgment to Defendant, Kamalin D. Kazmar-Grice, by incorrectly applying Tennessee and Federal Law. For the reasons below, we affirm the order of the trial court.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. ***See Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***See id.*** In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth ***specific facts*** showing that there is a genuine issue of material fact for trial.

***Id.*** at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***See Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. ***See Bain***, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is ***de novo*** on the record before this Court. ***See Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997).

***Ridgway v. Ridgway***, 454 U.S. 46 (1981) involved a situation remarkably similar to the case at bar. Richard H. Ridgeway, a career sergeant in the United States Army, and his wife, April, were parents of three minor children. The marriage ended with a divorce decree granted by a Maine court in December of 1977. The divorce judgment ordered Sergeant Ridgeway to pay specified child support and also ordered him to keep in force life insurance polices that he presently had for the benefit of the three children. At that time, Sergeant Ridgeway was insured under a $20,000.00 policy issued by Prudential Insurance Company pursuant to the provisions of the Servicemen's Group Life

Insurance Act of 1965, Pub. L 89-214, 79 stat. 880 (the "SGLIA"). Shortly after the parties divorced, Sergeant Ridgeway remarried and shortly thereafter changed the policy's beneficiary designation to one directing that the insurance proceeds be paid "as specified by law." Under the statutory scheme in place at that time, "by law" meant payable to his "lawful spouse . . . at the time of his death." *See id.* at 48-49.

After Sergeant Ridgway's death in 1979, both his former wife and his current wife filed claims for the proceeds of the policy. The former wife instituted suit in a Maine trial court seeking a declaratory judgment that the proceeds were payable to the children and the current widow joined the litigation as a party-plaintiff asserting a claim for the proceeds. A cross-claim was filed by the former wife seeking the imposition of constructive trust on any policy proceeds paid to the current widow. The trial court held for the decedent widow on the ground "imposition of a constructive trust would interfere with the operation of the federal SGLIA, and that such a disposition would therefore run afoul of the Supremacy Clause, U. S. Const., Art. VI and cl2." *Ridgway*, 454 U.S. at 49. On appeal to the Supreme Judicial Court of Maine, the judgment of the trial court was vacated, and the case was remanded with directions to enter an order naming the current widow as the constructive trustee of the policy proceeds. *See id.* at 48-50.

The Supreme Court found that the case was controlled by a decision of the Court in *Wissner v. Wissner*, 338 U.S. 655 (1950), where an insured under a policy issued pursuant to the National Service Life Insurance Act of 1958, 38 U.S.C. § 701 et seq. the ("NSLIA") named his parents as beneficiaries. After his death, the serviceman's widow claimed community property rights pursuant to California law. The NSLIA specifically provided that the insured serviceman had the right to designate and to change the beneficiary at any time, and it also contained an anti-attachment clause. The Supreme Court of the United States reversed the California court that held that the policy proceeds were community property, holding that the judgment of that court "nullifies the soldier's choice and frustrates the deliberate purpose of Congress. It cannot stand." *Wissner*, 338 U.S. at 659.

The *Ridgway* Court noted that the SGLIA, the same as its predecessor, NSLIA, allowed the insured service member "the right freely to designate the beneficiary and to alter that choice at any time by communicating the decision in writing to the proper office." *Ridgway,* 454 U.S. at 56. The Court, in vacating the judgment of the Maine Supreme Judicial Court, held "that the controlling provisions of the SGLIA prevail over and displace inconsistent state law." *Id.* at 60.

This Court has had occasion to deal with essentially the same issue as the case at bar. In *Herrington v. Boatwright*, 633 S.W.2d 781 (Tenn. Ct. App. 1982), a divorced wife, June Herrington, sued to enforce a property settlement agreement incorporated in a final divorce decree pertaining to the life insurance of her ex-husband, Malcolm E. Herrington. Mr. Herrington died subsequent to the divorce and at the time of his death he had various insurance policies, including a National Service Life Insurance Policy[2] for the face amount of $10,000.00. Just prior to his death,

---

[2] The *Ridgway* court notes that concerning the issue before us, the provision of the NSLI Act and the SGLI

(continued...)

he changed the beneficiary on the policies, including the NSLI policy. The trial court held that the decedent had violated the divorce decree and declared the plaintiff, the divorced wife, to be the owner of the proceeds of the policies, and that the widow of the deceased held the proceeds of the NSLI policy as constructive trustee for the plaintiff. The widow appealed, and on the issue concerning the NSLI policy, this Court reviewed the existing law and noted that "it is well established that questions respecting the proper beneficiaries under NSLI policies are governed by federal law rather than by state divorce law or state court divorce decrees." *Id*. at 784 (quoting *United States v. Donall*, (6th Cir. 1972) 456 F.2d 1246). The Court, relying upon *Wissner, supra.*; *United States v. Donall*, 466 F.2d 1246 (6th Cir. 1972); *Dyke v. Dyke*, 227 F.2d 461 (6th Cir. 1955); *Hoffman v. United States*, 391 F.2d 195 (9th Cir. 1968); and several other cases, held that the state court does not have the power to require an unwilling insured to maintain his former wife a beneficiary on his NSLI policy, and notwithstanding the terms of a separation agreement, the insured under a NSLI policy has the right to change the beneficiary. *See Herrington*, 633 S.W.2d at 785.

This Court considered the *Ridgway* decision in *Cary v. Cary*, 675 S.W.2d 491 (Tenn. Ct. App. 1984). In *Cary*, the issue was whether the decedent's estate is subject to liability where the decedent entered into a property settlement agreement to keep a serviceman's group life insurance policy in force for his minor children and then prior to his death changed the beneficiary. The trial court held for the new beneficiary, the second wife of the decedent, and the minor children appealed. The court noted that the appellants relied on the decision of the U. S. Supreme Court in *Ridgeway*, *supra*, pointing to *dicta* to the effect that the party may have a claim against an insured's estate under state law and specifically mentions a breach of contract. In affirming the trial court's dismissal of the claim against the estate, the Court said:

> The essential rulings in *Ridgway* are: "the insured service member possesses the right freely to designate the beneficiary and to alter that choice at any time by communicating the decision in writing to the proper office", 102 S.Ct. at 55, and claims based on property settlement agreements are not exempted from antiattachment provisions of 38 U.S.C.A., § 770(g).
>
> It is well settled that laws affecting construction or enforcement of a contract existing at the time of its making form a part of the contract. *Robbins v. Life Ins. Co.*, 169 Tenn. 507, 89 S.W.2d 340 (1936). When the settlement agreement sub judice is read in conjunction with the federal statutes, the right to freely change the beneficiary of the SGLIA policy negates the contractual provision as it relates to that policy. In this connection our Supreme Court, in refusing to enforce a contract where a widow had contracted away the statutory right of dissent from her husband's will, said:

---

[2](...continued)
Act are similar. *See* 454 U.S. at 56.

"Laws enacted from considerations of public concern, and to subserve the general welfare, cannot be abrogated by mere private agreement. *Recht v. Kelly*, 82 Ill., 147 [25 Am.Rep., 301]."

*Shirley v. Shirley*, 181 Tenn. 364, 181 S.W.2d 346 (1944).

We conclude the exercise by the deceased of his federal statutory right was not a breach of the settlement agreement; but assuming, arguendo, his action amounted to a breach, we believe the equitable maxim, *privatorum conventio juri publico non derogat* (the agreements of private individuals will not be allowed so to operate as to diminish the effect of a public law), would be applicable*.*

To sanction a suit for damages against one, or the estate of one, on the basis the individual had exercised a federal statutory right, would diminish the effect of a public law.

*Id.* at 493 (emphasis added).

Ms. Goodart asserts that the trial court failed to consider *dicta* in *Ridgway* which left open the possibility that, where fraud is involved, a plaintiff might be able to overcome both the attachment and designation of beneficiary provisions of the SLGIA.  In *Ridgway*, the Court wrote:

We need not presently address the legal aspects of extreme fact situations or of instances where the beneficiary has obtained the proceeds through fraudulent or illegal means as, for example, where the named beneficiary murders the insured service member. See *Shoemaker v. Shoemaker,* 263 F.2d 931 (6th Cir. 1959)*.* Our ruling on a situation of that kind is reserved for another day.

*Ridgway*, 454 U.S. at 60, n.9.  Counsel for Ms. Goodart points out that "at least one federal court has found that, regardless of the designation of beneficiary, it could indeed direct the payment of proceeds to another party."  In support of this statement, Appellant's brief cites the case of *Prudential Ins. Co. v. Tull*, 690 F.2d 848 (4th Cir. 1982).  However, in reviewing the facts of *Tull*, we note that the Fourth Circuit Court of Appeals granted such a departure from federal law where the beneficiary of the policy murdered the insured servicemember. *See id.*  We find no such equivalent factual basis in the present case.

Ms. Goodart also argues that, under Tennessee law, "a marital dissolution agreement which requires that an individual be named as a beneficiary of a life insurance policy existing at the time of the agreement vests in that individual an equitable interest in said policy." (citing *Holt v. Holt*,

995 S.W.2d 68 (Tenn. 1999)). Even if such an equitable interest may exist in the proceeds of Mr. Grice's SGLI policy, state-created equities cannot overcome the import of the Supremacy Clause of the United States Constitution.

Although we find the outcome in this case troubling, we are constrained to hold that Ms. Goodart cannot assert a claim to Mr. Grice's SGLI policy proceeds. On this point, the United States Supreme Court, in ***Ridgway***, wrote:

> We recognize that this unpalatable case suggests certain "equities" in favor of the respondent minor children and their mother. Sergeant Ridgway did have specific obligations to the children that were imposed by the 1977 divorce judgment of the Maine court. Those obligations not only concerned life insurance "now outstanding" for the benefit of the children, but also extended to their support, to clothing, to "medical, dental, and optical expense," and to certain loans and other indebtedness. Ridgway, instead, chose to name his then new wife as beneficiary of his SGLIA policy.
>
> A result of this kind, of course, may be avoided if Congress chooses to avoid it. It is within Congress' power. Thus far, however, Congress has insulated the proceeds of SGLIA insurance from attack or seizure by any claimant other than the beneficiary designated by the insured or the one first in line under the statutory order of precedence. That is Congress' choice. It remains effective until legislation providing otherwise is enacted.

***Id.*** at 62-63 (citations and footnotes omitted).

For the foregoing reasons, we affirm the order of the trial court granting summary judgment in favor of Appellee Kazmar-Grice. This case is remanded to the trial court for any further proceedings consistent with this opinion. Costs of this appeal are assessed to the Appellant, Janet Diana Goodart, and her sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.