# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 14, 2016 Session

## CHAZZ ALDEN HUGHES, ET AL. v. R ALLEN HUGHES

**Appeal from the Chancery Court for Carter County**
**No. 28680     John C. Rambo, Chancellor**
_____

**No. E2016-00561-COA-R3-CV-FILED-JANUARY 5, 2017**
_____

This appeal concerns a dispute over the proceeds of a decedent's federal group life insurance policy.  The decedent presumably intended to designate his brother, the appellee in this matter, as the sole beneficiary.  The appellants, children of the decedent, allege fraud on the part of the brother and seek to impose a constructive trust upon the funds he received.  The trial court granted summary judgment for the brother based on the application of the federal preemption doctrine as well as the Tennessee and federal law of fraud and the Tennessee Rules of Evidence.  The appellants appeal.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, C.J., joined.

John B. McKinnon, III, and Penny J. White, Johnson City, Tennessee, for the appellants, Chazz Alden Hughes and Tessarai Lee-Hughes Powers.

Steven C. Huret and Rebecca J. Ketchie, Kingsport, Chattanooga, Tennessee, for the appellee, Allen Hughes.


## OPINION

## I.  BACKGROUND

Prior to his death, Brady Lee Hughes ("Decedent") was employed by the United States Postal Service.  As a federal employee, he was entitled to participate in the Federal Employee Group Life Insurance ("FEGLI") program.   Metropolitan Life Insurance

Company ("Metlife") provided the FEGLI policy purchased by Decedent. On January 28, 1991, Decedent designated his brother, R. Allen Hughes ("Brother"), as the sole beneficiary of his FEGLI policy. After he designated Brother as the beneficiary of the FEGLI policy, Decedent and his wife, Cathy Ann Young Hughes (now Cathy Ann Young-Hilton), divorced. The final decree of divorce, which was entered October 8, 1992, incorporated the Marital Dissolution Agreement ("MDA") with a provision that stated: "Life Insurance: The husband shall maintain his current policy of life insurance with the children, beneficiaries." There is no suggestion in the record that Decedent ever owned any policy other than the MetLife policy under FEGLI. The appellants, Chazz Alden Hughes and Tessarai Lee Hughes-Powers (collectively, "the Children"), are Decedent's children and Brother's nephew and niece respectively.

Decedent died on December 16, 2011. MetLife paid all of the proceeds of his FEGLI insurance policy to Brother, in accordance with the beneficiary designation previously executed on January 28, 1991. According to the Children, the approximate sum of the death benefit was $340,000.

The Children subsequently filed suit to impose a constructive trust on the proceeds of Decedent's FEGLI insurance policy, citing the MDA provision as proof that the benefits belong to them. They contend "that at some point in the history of the said life insurance policy, that either they or [their mother] for the benefit of them, had been designated as the beneficiaries of the death benefits." The Children also allege that Brother received the insurance proceeds by fraud: they argue that Brother had promised Decedent that he would hold the proceeds in trust for the Children, and Decedent named him beneficiary of the policy in reliance on that promise. In support of their claims, the Children submitted, inter alia, an affidavit from Dr. Victor Young ("Dr. Young"), their maternal uncle, which recounts a conversation he had with Brother about the conversations Brother had with Decedent. They note that Brother used some of the proceeds (approximately $37,000) to pay for the Children's student loans and other living expenses.

Brother denies that there was any prior agreement with Decedent that he was to hold the FEGLI proceeds in trust for the benefit of the Children. In fact, he contends that he did not know until after Decedent's death that he had been named the sole beneficiary on the FEGLI policy. Brother further asserts that Decedent's policy is governed by federal law, which preempts Tennessee state law through the Supremacy Clause of the United States Constitution. He notes that in situations similar to this one, the United States Supreme Court has held that a constructive trust created by state law cannot override the federal insurance policyholder's valid beneficiary designation. Brother also argues that the Children cannot, as a matter of law, prove that Brother committed fraud to receive the insurance proceeds. He contends that he assisted the Children financially "only because I wanted to and not because I was under any explicit instructions from my late brother to do so." According to Brother, his "desire to honor his late brother's

memory by looking after his children does not mean that they are legally entitled to the FEGLI proceeds."

The trial court granted summary judgment to Brother on the bases that the creation of a constructive trust based on the MDA was preempted by federal law and that the Children did not satisfy the requisite elements to support their fraud claims. The court specifically held that FEGLI's provisions preempt all Tennessee law that would impose a constructive trust. The Children timely appealed the rulings of the trial court.

## II. ISSUES

The issues raised by the Children are restated as follows:

> a. Whether the holding in *Hillman v. Maretta* controls the outcome of this case in which the beneficiary is alleged to have committed constructive fraud in acquiring life insurance proceeds and when a state domestic relations order, "based on specific judicial recognition of particular needs" has directed a different disposition.

> b. Whether the grant of summary judgment can be upheld when the chancery court failed to consider the Children's constructive fraud claim and admissible evidence supporting that claim.

> c. Whether the federal preemption doctrine shields fraud committed by the beneficiary of a federal life insurance policy.

Brother raises the following issue:

> d. Whether the trial court erred when it granted a motion to strike of a portion of the affidavit of Dr. Young on the ground of hearsay within hearsay.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. To make this showing the moving

party—where it does not bear the burden of proof at trial—must either "(1) affirmatively negat[e] an essential element of the nonmoving party's claim or (2) [demonstrate] that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

This court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.,* 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the non-movant and resolve all factual inferences in the non-movant's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the moving party is entitled to judgment as a matter of law and the trial court's decision will be upheld. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## IV. DISCUSSION

### a.

It is settled law in Tennessee that a death benefit beneficiary has no vested interest or right in the policy but rather more an expectancy. *First Nat'l Bank v. Mut. Benefit Life Ins. Co.*, 732 S.W.2d 278 (Tenn. Ct. App. 1987). Under state law, this "mere expectancy" may be converted into a vested interest where, for instance, a husband is required by a divorce decree to keep a life insurance policy in effect naming certain beneficiaries and is denied the right to change the beneficiary by such court order. *Herrington v. Boatright*, 633 S.W.2d 781, 783 (Tenn. Ct. App. 1982). As noted in *Holt v. Holt,* 995 S. W.2d 68 (Tenn. 1999):

> Tennessee courts have utilized equitable grounds to protect persons legally mandated to be listed as beneficiaries of a life insurance policy. As such, it is clear under Tennessee law that an enforceable agreement, such as a marital dissolution agreement, which mandates that an individual be listed as a beneficiary of a life insurance policy existing at the time of the agreement vests in that individual an equitable interest in the designated policy.

*Id.* at 72. The *Holt* Court further provided that "when a life insurance policy exists at the time of the divorce decree, the mandated beneficiary of the divorce decree retains a vested interest in that policy in the event that the obligor spouse does not comply with the

terms of the divorce decree." *Id.* at 74.  Indeed, under Tennessee contract law, a divorce decree and MDA may give rise to a constructive trust imposed on the proceeds of a life insurance policy.

Since life insurance proceeds are ordinarily paid out according to state law, the trial court observed:

> In this case, a constructive trust would be appropriate *under Tennessee law*.  Plaintiffs' third-party beneficiary and resulting trust arguments merge, cumulatively asking that a constructive trust be imposed for their benefit.  The controlling MDA required Decedent to name Plaintiffs as beneficiaries of Decedent's life insurance policies. . . . [T]he designation of Plaintiffs as beneficiaries in the MDA gives them a vested interest in the policy proceeds.

(Emphasis added.).  As noted by the court, a constructive trust would be imposed if the analysis went no further.  If the life insurance policy had been a private contract, provisions in the divorce judgment would have effected a change in beneficiary.

However, life insurance policies issued under and governed by federal statute are an exception.  These policies are not creatures of contract, but of federal law, which preempts state law that would yield a different treatment.  In *Herrington*, we noted that notwithstanding any provision to the contrary in a separation agreement, the insured's second policy, a National Service Life Insurance policy,[1] afforded him the right to change beneficiaries under the policy up to the time of his death because the statutes creating that insurance clearly stated an intent to preempt state law.  633 S.W.2d at 785.  *See Lincoln Nat'l Life Ins. Co. v. Johnson*, 38 F. Supp. 2d 440, 451 (E.D. Va. 1999).  In *Ridgway v. Ridgway*, 454 U.S. 46 (1981), the United States Supreme Court concluded that Congress, in enacting the Serviceman's Group Life Insurance Act ("SGLI"), "spoke[ ] with force and clarity in directing that the proceeds belong to the named beneficiary and no other." *Id.*, 454 U.S. at 56 (internal quotations omitted).  Other courts have concluded that the state divorce decree directing the decedent to designate his children as beneficiaries under his life insurance policy conflicted with the decedent's right under FEGLIA, the policy we have before us, to name the beneficiary, and must give way.  *See Metro. Life Ins. Co. v. Zaldivar*, 413 F.3d 119, 121 (1st Cir. 2005); *Metro Life Ins. Co. v. Christ*, 979 F.2d 575, 582 (7th Cir. 1992).

Congress enacted FEGLI pursuant to a 1954 act to "provide low-cost group life insurance to Federal employees." *Hillman v. Maretta,* 133 S. Ct. 1943, 1947 (2013).

---

[1]National Service Life Insurance was generally issued to Veterans of World War II. Benefits.gov.

Life insurance policies offered under FEGLI are underwritten by private companies but operate in accordance with the applicable federal statutes and are administered by the Office of Personnel Management ("OPM"). 5 U.S.C. § 8716. The statute and regulations that govern FEGLI policies are found at 5 U.S.C. § 8701 et seq. and 5 C.F.R. § 870.101 et seq. Payout of benefits is addressed in 5 U.S.C. § 8705 and corresponding regulations are found in 5 C.F.R. § 870.801. When a federal employee dies, his FEGLI policy proceeds are paid out to his survivors in a specific "order of precedence," first to the "beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death . . . ." 5 U.S.C. § 8705(a). The signed, witnessed writing must be filed with the government to be effective. *Id.* Any changes to or revocations of the beneficiary form must likewise be signed, witnessed, and filed with the government. *Id.* Requirements of FEGLI policies are strictly construed. *Mercier v. Mercier*, 721 F. Supp. 1124 (D.N.D. 1989).

Congress provided in 5 U.S.C. § 8709(d)(1) that FEGLI policies preempt state law. The statute states as follows:

> The provision of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any state or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

As noted in *Hillman*, the provision is an express pre-emption. 133 S.Ct. at 1949.

Under a FEGLI policy, an insured has a right to change the name of the beneficiary of the proceeds. Federal courts have taken the position that Congress intended that the beneficiary properly designated by the insured take precedence over any other beneficiary, "regardless of whether the nondesignated individual might have a valid claim under state law." *Matthews v. Matthews*, 926 F. Supp. 650, 652 (N.D. Ohio 1996); *Mercier*, 721 F. Supp. at 1126. "[W]here a beneficiary has been duly named, the insurance proceeds she is owed under FEGLIA cannot be allocated to another person by operation of state law." *Hillman*, 133 S. Ct. at 1953. The legislative history of FEGLIA demonstrates that Congress "intended to establish, for reasons of administrative convenience, an inflexible rule that a beneficiary must be named strictly in accordance with the statute, irrespective of the equities in a particular case[.]" *Metro. Life Ins. Co. v. Manning,* 568 F.2d 922, 926 (2d. Cir. 1977) (citing Senate Rep. No. 1064, 89th Cong., 2d News, 2070, at 2071 (1966). Thus, the right of an insured to designate whomever he or she wants as the beneficiary of the FEGLI proceeds is therefore very broad and is unrestricted by state laws to the contrary. *Mercier*, 721 F. Supp. at 1126. A beneficiary designation made according to procedures prescribed by FEGLI is strictly enforced.

*Prudential Ins. Co. v. Perez*, 51 F. 3d 197, 198 (9th Cir. 1995).

If a divorce judgment is deemed to control payment of FEGLI proceeds, it conflicts with the federal statutory order of precedence. 5 U.S.C. § 8705(a). Numerous federal courts have held that the federal regulations regarding FEGLI benefits preempt a state divorce decree that orders an insured to designate or maintain certain persons as beneficiaries of FEGLI benefits. *See Christ*, 979 F.2d at 575; *Dean v. Johnson*, 881 F.2d 948 (10th Cir. 1989); *Metro. Life Ins. Co. v. McMorris*, 786 F.2d 379 (10th Cir. 1986); *Metro Life Ins. Co. v. McShan*, 577 F. Supp. 165 (N.D. Cal. 1983); *Knowles v. Metro. Life Ins. Co.* 514 F. Supp. 515 (N.D. Ga. 1981) (marriage settlement agreement cannot operate as a waiver or restriction of insureds right to change beneficiary). As noted by Brother, the above cases are consistent with three significant U.S. Supreme Court cases: *Wissner v. Wissner,* 338 U.S. 655 (1950), *Ridgeway*, 454 U.S. 46 (1981), and *Hillman*, 133 S. Ct. 1943 (2013).

In a local Tennessee federal district court ruling, *Faris v. Long*, No. 2:07-CV-102, 2008 WL 2117243 (E.D. Tenn. May 20, 2008), the court held that "a state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments. . . .That principle is but the necessary consequence of the Supremacy Clause of our National Constitution." *Faris*, 2008 WL 2117243, at *2 (quoting *Ridgeway*, 454 U.S. at 55). The *Faris* Court observed: "It has been consistently held in regard to FEGLIA that a divorce decree cannot operate as a waiver or restriction of an insured's right to change the beneficiary when federal regulations conflict." *Id.* (quoting *Prudential Ins. Co. v. Hinkle*, 121 F. 3d 364, 367 (8th Cir. 1997); accord *Dean v. Johnson*, 881 F.2d 948, 949 (10th Cir. 1989) ("The state domestic relations court order ostensibly restricts the federal insured's right to designate a beneficiary and thus cannot be valid under FEGLIA."); *see also Matthews*, 926 F. Supp. at 653 ("[F]ederal law, not state law, governs this action and . . . a beneficiary designated in accordance with the procedures prescribed by the FGLIA [sic] should prevail over beneficiaries designated in another document.")). Likewise, a panel of this court noted in *Goodart v. Kazmar-Grice*, 88 S.W. 3d 167 (Tenn. Ct. App. 2002), in which a former wife and children sued to impose a constructive trust on SGLI proceeds paid to deceased's widow contrary to an MDA and final divorce decree, : "Even if such an equitable interest may exist in the proceeds of . . . SGLI policy, state-created equities cannot overcome the import of the Supremacy Clause of the United States Constitution." *Id*. at 172.

We note that the Children could have protected their state law interests in the FEGLI policy and avoided the situation before us if they would have complied with the 1998 amendment to FEGLIA prior to Decedent's death in 2011. *See* Pub. L. No. 105-205, § 1, 112 Stat. 683 (July 22, 1998). Recognizing the possible inequities in cases like the one before us, Congress created a statutory exception to the general rule that proceeds are paid to the named beneficiary: If a "court decree of divorce, annulment, or legal

separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation" expressly provides that payment should be made to a person who is not the named beneficiary, the OPM will override the beneficiary form and honor the court order. 5 U.S.C. § 8705(e)(l). However, the decree, order, or agreement "shall not be effective unless it is received, before the date of the covered employee's death, by the employing agency, or if the employee has separated from service, by the Office [of Personnel Management]." 5 U.S.C. § 8705(e)(2). To be effective, the "certified copy of the court order" must be received by the employer before the death of the insured. *See USAA Life Ins. Co. v. Benvenuto*, No. 13-cv-660, 2016 WL 5404599, at \*4 (N.D. Ill. Sept. 28, 2016). Despite having over a decade to do so, no one sent Decedent's divorce decree to his employing agency or the OPM. Properly filing the paperwork would have trumped Decedent's designation of Brother. Because the divorce judgment was not executed and filed as required by the federal statute, it has no force or effect in changing the named beneficiary. This court cannot nullify Congress's choice that FEGLI requirements for designating a beneficiary must be strictly applied. 5 U.S.C. § 8705(a).

As noted by Justice Sotomayor in *Hillman*:

> Congress established a clear and predictable procedure for an employee to indicate who the intended beneficiary of his life insurance shall be. Like the statutes at issue in *Ridgway* and *Wissner*, *FEGLIA evinces Congress' decision to accord federal employees an unfettered "freedom of choice" in selecting the beneficiary of the insurance proceeds and to ensure the proceeds would actually "belong" to that beneficiary. An employee's ability to name a beneficiary acts as a "guarantee of the complete and full performance of the contract to the exclusion of conflicting claims."* With that promise comes the expectation that the insurance proceeds will be paid to the named beneficiary and that the beneficiary can use them.

*Hillman*, 133 S. Ct. at 1952-53 (emphasis added) (internal citations omitted). As further observed in *Hillman*:

> Congress enacted 5 U.S.C. § 8705(e) following federal-court decisions that found FEGLIA to pre-empt state-court constructive trust actions predicated upon divorce decrees. Reflecting this backdrop, the House Report noted that "Under current law, . . . divorce decrees . . . do not affect the payment of life insurance proceeds. Instead, when the policyholder dies, the proceeds are paid to the beneficiary designated by

the policyholder, if any, or to other individuals as specified by statute." H.R. Rep. No. 105-134, p.2 (1997). To address the issue raised by these lower court cases, Congress could have amended FEGLIA to allow state law to take precedence over the named beneficiary when there is any conflict with a divorce decree or annulment. But Congress did not do so, and instead described the precise conditions under which a divorce decree could displace an employee's named beneficiary.

133 S.Ct. at 1953, n. 5 (internal citations omitted). Accordingly, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Hillman*, 133 S.Ct. at 1953 (quoting *Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616-617 (1980)). A limited exception to the order of precedence is provided in section 8705(e). "If States could make alternative distributions outside the clear procedure Congress established, that would transform this narrow exception into a general license for state law to override FEGLIA." *Hillman*, 133 S.Ct. at 1953 (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 28-29 (2001)).

We must conclude that Brother, the duly named beneficiary, was the lawful beneficiary of the FEGLI policy and any effort to allocate the proceeds to the Children by operation of state law through the use of a constructive trust is preempted by federal law.

### b.

### Fraud

The Children maintain that the federal preemption does not apply in cases of fraud. We agree that federal preemption cannot be used as a shield for fraud. *McMorris*, 786 F.2d at 380.

In summary, the Children assert:

> Decedent and Brother agreed, either before or after Decedent named Brother as beneficiary in 1991, that Brother would, in the event of Decedent's death, use the FEGLI proceeds for the benefit of Decedent's Children. As a result of these representations, Decedent either named Brother beneficiary of the insurance proceeds in 1991, or did not change the beneficiary designation to the Children. Brother knew when he made the representations to Decedent that they were false

and, when he was paid the said insurance proceeds, he converted the monies to himself. His representations and actions constitute fraud, actual or constructive, an abuse of confidence, and constitute unconscionable conduct on the part of Brother to the detriment of the Children. As a result of his misrepresentations and fraudulent conduct, Brother has been unjustly enriched at the expense of the Children

In *Free v. Bland*, 369 U.S. 663, 670 (1962), the Supreme Court recognized a possible fraud exception in cases involving U.S. Savings Bonds. In another U.S. Savings Bonds case, *Yiatchos v. Yiatchos*, 376 U.S. 306 (1964), the Court analyzed the claim of fraud under the applicable federal law and regulations: "Under the federal regulations petitioner is entitled to the bonds unless his deceased brother committed fraud or breach of trust tantamount to fraud . . . . [W]hether or not there is fraud which will bar the named beneficiary in a particular case must be determined as a matter of federal law." *Id.* at 309. This fraud exception is referred to as the "exception to the regulatory imperative." *See Yiatchos*, 376 U.S. at 307.

In *Ridgway*, a federal life insurance case, the Supreme Court explicitly recognized that it was not addressing "the legal aspects of extreme fact situations or of instances where the beneficiary has obtained the proceeds through fraudulent or illegal means as, for example, where the named beneficiary murders the insured service member." *Ridgway*, 454 U.S. at 57. The *Ridgway* Court distinguished *Yiatchos*:

> There is, finally, a fundamental distinction between respondents' asserted interests in the [Servicemembers' Group Life Insurance] policy proceeds and the community property concepts at issue in *Yiatchos*. Federal law and federal regulations bestow upon the service member an absolute right to designate the policy beneficiary. That right is personal to the member alone. It is not a shared asset subject to the interests of another, as is community property."

*Ridgway*, 454 U.S. 46, 59-60 (1981). In a footnote, the Court stated that *Yiachtos* and *Free*: "were concerned with a particular type of fraudulent behavior: attempts 'to divest the wife of any interest in her own property.' . . . . In this case, [serviceman] misdirected property over which he had exclusive control. In doing so, of course, he deprived the [children] of benefits to which they were entitled under state law." 454 U.S. at 59, n. 8.

We find instructive the case of *Metropolitan Life Insurance Company v. Bradway*, No. 10-Civ.0254 (JCF), 2011 WL 723579 (S.D.N.Y. Feb. 24, 2011), which involved a situation where a child once listed as a beneficiary on a FEGLI policy asserted that the beneficiary designated at the time of her father's death had *"promised both her husband*

*(the decedent and child's father) and [child] that she would 'help ensure that the life insurance proceeds were paid to [child]' but has since refused to fulfill that promise."* 2011 WL 223579, at *7 (emphasis added). The child asked the court "to impose a constructive trust on the decedent's FEGLI policy proceeds, which would redirect them to her." *Id.* The *Bradway* Court held that "federal case law is unequivocal that the imposition of a constructive trust on the proceeds of a FEGLI policy violates the Supremacy Clause of the United States Constitution." *Id.* The court noted that a "limited exception to this rule exists to block properly-named FEGLI policy beneficiaries from collecting benefits where they have been convicted of murdering the insured. *See, e.g., Metropolitan Life Insurance Co. v. White*, 972 F.2d 122 (5th Cir. 1992) (affirming that husband's claim for benefits under wife's FEGLI policy was forfeited due to his conviction for murdering her); *see also Ridgway*, 454 U.S. at 60 n. 9 (noting possible exception to general rule in "extreme fact situations . . . for example, where the named beneficiary murders the insured")." The *Bradway* Court proceeded to grant summary judgment to the named beneficiary, stating that *"[e]xisting federal precedent clearly bars this Court from imposing a constructive trust on the proceeds of the decedent's FEGLI policy based on the alleged promises." Id.* at *8 (emphasis added).

Upon our view, the pleadings and proof in this case do not evidence the "extreme fact situations or . . . instances" of fraud contemplated by *Ridgway*. The offerings of evidence by the Children consist in large part of conjecture and arguably take Brother's actions and statements out of context. Furthermore, Brother's preemption argument negates an essential element of the Children's claim. Under the facts and circumstances of the present case, the trial court properly found that there were no genuine issues of material fact and that Brother was entitled to an award of summary judgment. We pretermit discussion of all other issues raised in this appeal.

## V.  CONCLUSION

The order of the trial court granting summary judgment in favor of R. Allen Hughes is affirmed. This case is remanded to the trial court for any further proceedings consistent with this opinion. Costs of the appeal are assessed against the appellants, Chazz Alden Hughes and Tessarai Lee-Hughes Powers.

_____
JOHN W. MCCLARTY, JUDGE