**MIDLANTIC NATIONAL BANK, Plaintiff,**

v.

**Harlan SHELDON et alia, Defendants.**

**No. CV–90–2089.**

United States District Court, E.D. New York.

Aug. 27, 1990.

---

Ostrowitz & Ostrowitz, New York City, for plaintiff.

Gerald J. Barre, Lake Success, N.Y., for defendant Hanse Point Marina.

SIFTON, District Judge.

On June 21, 1990, plaintiff, Midlantic National Bank (the "Bank"), filed a complaint in admiralty based on a preferred mortgage lien held against a boat purchased by defendant Harlan Sheldon. According to the original complaint, defendant Hanse Point Marina holds a maritime lien against the same vessel for repairs and storage charges, is now in possession of the vessel, and had given notice of its intent to auction the boat on July 2, 1990. The marina subsequently agreed not to hold this auction, pending resolution of plaintiff's application to enjoin this auction. On July 12, both parties appeared before the Court on plain-

tiff's order to show cause why the auction should not be enjoined, but the matter was adjourned to give plaintiff an opportunity to respond to the marina's opposition papers.

The matter is now before the Court on plaintiff's application for an order foreclosing its ship mortgage and directing Hanse Point Marina to turn over the vessel for sale by the plaintiff and, pending final determination of this matter, for an injunction against the sale or transfer of the vessel on the part of defendants. The defendant marina has opposed this motion and counterclaimed *in rem* to enforce its own maritime lien against the boat in question. Both parties agree that their claims may be determined on the basis of the documentary evidence submitted to the Court without the need for testimony.

The facts in this case pertinent to this matter are, in any event, not in dispute. On August 18, 1986, Harlan Sheldon entered into a purchase money ship mortgage with the plaintiff's assignor, First Commercial Corp., in connection with the purchase of a 42 foot, 1984 model, Sundance Seadancer, serial number SDH000860584. The mortgage agreement states that the vessel is a 22 ton houseboat which is not self-propelled. The financing arrangement is reflected by a "New York—Marine" Promissory Note and Security Agreement dated Sept. 18, 1986, pursuant to which Sheldon agrees to repayment of the total sum of $38,891.49 over a period of 120 months, at 11 percent interest. The promissory note explicitly provides that the contract would be assigned to the plaintiff, Midlantic National Bank.

The promissory note also provides that "if the Boat is registered with the Coast Guard, [the mortgagor, Sheldon] must sign and deliver a Preferred Ship Mortgage giving [the Bank] first lien on the Boat." On December 30, 1986, Sheldon also signed a "Mortgage of Vessel Agreement," by which he mortgaged his boat as collateral to plaintiff Bank. The mortgage of vessel was filed of record with the United States

Coast Guard on March 26, 1987, in New York City.

On August 28, 1989, defendant Sheldon filed for Chapter 7 relief in the United States Bankruptcy Court for the Eastern District of New York. Plaintiff was notified of this filing and apparently did not file an objection. Sheldon was granted a discharge of his obligations by order dated December 7, 1989.

At some time prior to the filing of the bankruptcy proceeding, Sheldon delivered his boat to the custody of the defendant marina. A copy of a bill from the marina indicates that Sheldon had incurred approximately $12,600 in storage fees (for storage between January and May 31, 1990) and approximately $15,800 in repairs, for a total of $28,480. Plaintiff recently received a notice of lien and sale in which the marina announced its intention, pursuant to sections 184 and 201 of the New York State Lien Law, to auction Sheldon's vessel on July 2. That sale has, as noted, been postponed. The notice asserted a lien of $28,-480, which was demanded and due on May 31, 1990, and estimated the value of the boat at $15,000. If a sale by the marina is permitted, the Bank's remaining security interest will be extinguished.

## DISCUSSION

Plaintiff argues that the marina's threatened sale of the boat would violate federal law and the supremacy clause of the United States Constitution because this Court has exclusive jurisdiction over this federal admiralty claim and because plaintiff's preferred ship mortgage has priority over any other lien.

New York Lien Law § 184 specifically provides that a person who stores, maintains, keeps or repairs a motor boat, or furnishes gasoline or other supplies at the request or with the consent of the owner, whether or not the vessel is subject to a security interest, may detain the boat until such sum is paid. Section 200 of the New York Lien Law provides that a lien against personal property may be satisfied by the public sale of such property, while section 201 specifies the notice required for such sale.

It is well established that under the New York Lien Law, an unrecorded possessory lien under section 184 ordinarily has priority over a perfected security interest, such as that held by the defendant Bank. *See Industrial National Bank of Rhode Island v. Butler Aviation Int'l, Inc.*, 370 F.Supp. 1012, 1018 (E.D.N.Y.1974); *Willys–Overland, Inc. v. Prudman Automobile Co.*, 196 N.Y.S. 487. Thus, N.Y. UCC § 9–310 expressly provides:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

N.Y. UCC § 9–310 (McKinney's 1990).

However, N.Y. UCC § 9–104(a) states that Article 9 is not applicable to "any security interest subject to any statute of the United States to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property." Here, it is clear that this Court's admiralty jurisdiction and the provisions of 46 U.S.C. §§ 31301 *et seq.* preempt the New York Lien Law.

A creditor obtains a "preferred mortgage" under federal maritime law, 42 U.S.C. § 31322, if the mortgage (1) includes the whole of the vessel, (2) covers a documented vessel, (3) has as the mortgagee a federally insured depository institution, and (4) is filed in substantial compliance with section 31321. It is not disputed that plaintiff's mortgage meets the requirements of this section and has been appropriately filed.

Section 31325(b)(1) of the same title provides that, upon default of any term of the preferred mortgage, the mortgagee may enforce a preferred mortgage lien in a civil action *in rem* for a documented ves-

sel. Section 31325(c) states that the district courts have original jurisdiction of such a civil action and, where the vessel is documented, exercises exclusive jurisdiction. Since plaintiff has filed an *in rem* proceeding in this district, this Court has exclusive jurisdiction over the matter.

■ Section 31326(a) provides that a district court may order a vessel sold in an *in rem* action to enforce a preferred mortgage lien and that any claim in the vessel existing on the date of sale is terminated. Section 31326(b) further provides:

"Each of the claims terminated under subsection (a) of this section attaches, in the same amount and in accordance with their priorities to the proceeds of the sale, except that—

(1) the preferred mortgage lien has priority over all claims against the vessel (except for expenses and fees allowed by the court, and preferred maritime liens); and

(2) for a foreign vessel, the preferred mortgage lien is subordinate to a maritime lien for necessaries provided in the United States."

Thus, unless the marina's possessory lien qualifies as a "preferred maritime lien," the Bank's preferred mortgage on the vessel in question has priority under the federal admiralty scheme. The marina appears to have established a normal "maritime lien" under section 31342 in that it has provided "necessaries" to the vessel, defined as including repairs and use of a dry dock. However, providing necessaries is not one of the six categories of liens that qualifies as a "preferred maritime lien" under section 31301(5).

The defendant marina concedes that, if plaintiff has secured a valid preferred ship mortgage, plaintiff would have a lien superior to its own maritime lien. However, defendant asserts that when Sheldon and the Bank agreed to the mortgage on December 30, 1986, the houseboat in question was statutorily excluded from the class of vessels subject to a preferred ship mortgage. Section 922 of title 46, United States Code App., which was then in effect, stated that a preferred mortgage would include any valid mortgage "which at the time it is made includes the whole of any vessel of the United States (other than a ... barge ... of less than twenty five gross tons)." 46 U.S.C. App. § 922(a) (1920), *repealed by* 46 U.S.C. § 30101 (1989).

Without addressing the issue of why the old statute would still be applicable, both sides have submitted a variety of arguments, none dispositive, on the definition of a "barge" under the old section 922(a). Section 911 of title 46, which provided definitions for that chapter, was silent on the definition of a "barge." The marina asserts that, because 46 U.S.C. § 2101(2) now defines a "barge" as meaning a vessel that is not self-propelled, the houseboat qualifies as a barge under 25 tons and is therefore excluded. However, as plaintiff points out, 46 U.S.C. App. § 922 was enacted as part of the Ship Mortgage Act of 1920, which was amended in 1935 and 1961. It therefore could not have contemplated the definition of barge made in 46 U.S.C. § 2101, which was not enacted until 1983. Moreover, the definitions contained in section 2101 specifically apply only to subtitle II of title 46 and not to subtitle III relating to maritime liability.

Plaintiff's citation of case law which demonstrates that houseboats constitute "vessels" that are subject to admiralty law jurisdiction is also not on point. These cases only demonstrate that houseboats that are not self-propelled, like barges, may be the subject of an ordinary maritime lien. *See Hudson Harbor 79th Street Boat Basin, Inc. v. Sea Casa*, 469 F.Supp. 987 (S.D.N.Y.1979). They do not establish that houseboats are vessels inappropriately classified as "barges" for the purpose of a preferred mortgage or lien.

However, examination of the legislative history of 42 U.S.C. App. § 922 indicates that the definition of a barge was not meant to include a houseboat or any other pleasure craft. Up until 1935, the preferred mortgages statute excluded all ships of under 200 gross tons, a provision that excluded practically the entire commercial fishing fleet, as well as pleasure craft. In 1935, a proposal was made to dispense with the tonnage requirement entirely and make

the act applicable to "any vessel of the United States." G. Gilmore & C. Black, *The Law of Admiralty* 696 (2d ed. 1975). However, in response to pressure from the New York Towboat Association, which was concerned about losing priority on their liens against harborcraft, the provision was rewritten to exclude a "towboat, barge, scow, lighter, carfloat, canal boat, or tank vessel of less than two hundred gross tons." *Id.* In 1961, the Act was again amended to reduce the tonnage requirement to 25 tons. Given that the statutory exception was originally carved out for commercial tugboats and the like, there is a strong presumption that pleasure boats like houseboats were not placed in the same category. As at least one commentator has concluded, the 1935 amendment "brought within the Act the greater part of the commercial fishing fleet as well as pleasure craft." A. Parks, *The Law of Tug, Tow, and Pilotage* 845–46 (2d ed. 1982); *see also Bass River Assoc. v. Bass River Township*, 573 F.Supp. 205 (D.N.J. 1983) (noting that houseboats are subject to preferred ship mortgages).

■ Moreover, as the marina acknowledges, 46 U.S.C. App. § 922 was repealed by and re-enacted as 46 U.S.C. §§ 30101–31343. The new statute defining a preferred mortgage, 46 U.S.C. § 31322 (from which the language excluding barges, etc., has been omitted), was explicitly made effective January 1989, or January 1990 for vessels for which an application for documentation had been filed. *See* Note to 46 U.S.C.A. § 31322; Pub.L. 100–710, Title I, § 107(a), Nov. 23, 1988. Moreover, the language of section 31322 states that "a preferred mortgage is a mortgage, whenever made," that complies with the specified conditions. Because the Bank's mortgage, although agreed to in 1986, now complies with the conditions of this statute, it qualifies as a preferred mortgage. Nothing in the language of this section or the exceptions to the effective date indicate that

section 31322 only applies to mortgages made after the effective date. Indeed, the fact that section 31322 specifically does not apply to any civil action filed before January 1, 1989, indicates that it governs all subsequently filed actions, regardless of when the mortgage was originally made.

Rule C(2) of the Supplemental Rules for Admiralty and Maritime Claims provides that, in order to institute an action *in rem*, the complaint must be verified, the property must be described with reasonable particularity, and the complaint must state that the property is in the district or will be during the pendency of the action. The original complaint filed by plaintiff was not verified. Plaintiff has now submitted a verified complaint that specifically describes the boat in question. The complaint also states that the boat is in the possession of the marina based in Freeport, Long Island, within this district.

■ Having determined that the conditions for an action *in rem* exist, the Court authorizes a warrant for the arrest of the subject vessel to be issued, which warrant shall be delivered by the Clerk of the Court to the U.S. Marshal for service. *See* Supplemental Rule C(3). Pursuant to Rule E(4)(b), the marshal shall take the ship into the marshal's possession for safe custody. Pursuant to 46 U.S.C. § 31326(a), the Court orders that the vessel be sold in order to enforce the Bank's preferred mortgage lien. Any remaining funds shall be paid to the marina toward satisfaction of its subordinate maritime lien.[1] *Id.* In accordance with Supplemental Rule E(9)(c), sale of the property shall be made by the marshal or deputy marshal, and the proceeds of the sale shall be paid into the court registry to be disposed of according to law.

SO ORDERED.

■

---

1. The defendant marina points to Supplemental Rule E(4)(e), which provides that the Supplemental Rules do not alter the provision of 28 U.S.C. § 1921 with respect to the expenses of seizing and keeping property that has been attached or arrested. Defendant implies that the dockage charges of $100 per day for the houseboat should be compensated under these provisions. However, 28 U.S.C. § 1921 solely authorizes the marshal to obtain fees from the litigants for the costs of its services in seizing and keeping property and provides no basis for authorizing payments to the litigants themselves.