**NATIONAL LIABILITY & FIRE INSURANCE CO., Plaintiff,**

v.

**RICK'S MARINE CORP. and Adam Weinstein, Defendants.**

**Civil Action No. 15–6352(DRH)(ARL)**

United States District Court, E.D. New York.

Signed 05/17/2017

For Plaintiff: Nicoletti Horning &
Sweeney, Wall Street Plaza, 88 Pine
Street, Seventh Floor, New York, New
York 10005, By: John A.V. Nicoletti, Esq.,

William M. Fennell., Esq., Cali L. Eckler, Esq.

For Defendant Rick's Marine: Kennedy Lillis Schmidt & English, 75 Maiden Lane, Suite 402, New York, New York 10038, By: Craig S. English, Esq.

For Defendant Adam Weinstein: Rosenberg & Pittinsky, LLP, 232 Madison Avenue, Suite 906, New York, New York 10016, By: Laurence D. Pittinsky, Esq.

## MEMORANDUM & ORDER

HURLEY, Senior District Judge:

Plaintiff National Liability & Fire Insurance Co. ("Plaintiff" or "National") commenced this action against defendants Rick's Marine Corp ("RMC") and Adam Weinstein ("Weinstein") pursuant to 28 U.S.C. § 1333 asserting claims against RMC for (1) a declaration pursuant to 46 U.S.C. § 31343 that RMC does not have a valid lien upon the vessel M/V Pelagic (the "Pelagic" or "Vessel"); (2) conversion; and (3) negligence. Its claims against Weinstein are for (1) breach of contract and (2) a declaratory judgment that National has no duty to indemnify or defend him against the foregoing breach of contract claim. Presently before the Court is Plaintiff's motion for summary judgment on its claim against RMC for wrongful conversion of the Vessel. For the reasons set forth below, the motion is denied.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and are undisputed as between National and RMC[1] unless otherwise noted.

Weinstein purchased the Vessel in or about mid-year 2014. National insured Weinstein for the Vessel pursuant to an insurance policy effective from June 19, 2014 to June 19, 2015. RMC performed certain work and repairs on the vessel at Weinstein's instructions and launched the Vessel during the afternoon of May 8, 2015. Subsequent to its launch but that same day, the Vessel sank alongside a dock at RMC. The Vessel was refloated and then brought ashore and placed in the marina at RMC.

National acquired title to the vessel when, on or about June 29, 2015, Weinstein executed a bill of sale to National as the purchaser and recorded the sale with the U.S. Coast Guard's National Vessel Documentation Center. National made several requests to RMC to allow it to take possession of the Vessel but RMC refused, asserting that there is an unpaid balance of $25,038.92 for storage and repairs of the Vessel, and has maintained possession of the Vessel. National assumes there is a balance owed to RMC for purposes of this motion.

The instant action was commenced on November 5, 2015. Although RMC commenced a third party action against the Vessel on March 4, 2016, it has not effected an arrest of the Vessel pursuant to Rules C and E of the Supplemental Rules for Admiralty or Maritime Claims. According to both its answer and the third-party complaint, at the time the Vessel sank, RMC had not been fully paid for the repair work it performed on the Vessel, which charges, together with accrued storage charges, remain outstanding despite demand for payment. RMC admits it has not filed a federal notice of lien against the Vessel but asserts that the filing of such a lien was neither possible nor required.

---

1. Weinstein takes no position on the motion and does not concede the veracity of any of the factual allegations set forth. *See* DE 27–6.

## DISCUSSION

### I. Standard: Motion for Summary Judgment

■ Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

■ To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

■ The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).

### II. The Parties' Contentions

As presented by the parties, the pivotal issue on this motion for summary judgment on National's conversion claim is whether RMC has any lien rights in the Vessel that would allow it to retain possession of the Vessel.

National answers that question in the negative, making several arguments in support thereof. First, to the extent that RMC has a maritime lien, the relevant federal maritime statute does not confer the right of self-help enforcement and any such lien cannot be enforced because a notice of lien was not recorded. Second, to the extent that RMC relies upon New York Lien Law § 184, federal maritime law is the exclusive remedy to enforce liens and preempts state law.

RMC responds that (1) the existence of a federal mechanism by which a lienholder may perfect and assert a maritime lien against a vessel in rem does not invalidate

a state possessory lien on the same vessel; (2) the preemption language of 26 U.S.C. § 31307 is limited in that it only prevents state laws from creating actions against vessels as juridical persons in rem, which N.Y. Lien Law § 184 does not create, and therefore its retention of the Vessel pursuant to the Lien Law is not a conversion; and (3) under federal maritime law liens for necessaries are not required to be filed.

The Court will begin with a brief discussion of the law of conversion and the relevant statutes.

## III. Conversion

▮ "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006); *accord Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F.Supp.2d 153, 163 (E.D.N.Y. 2013) ("[A] plaintiff must allege: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question ... to the exclusion of the plaintiff's rights." (internal quotation marks omitted)). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's right." *Id.* at 50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (citations omitted). To prevail on its conversion claim, National must establish that RMC " 'exercised an unauthorized dominion over the [Vessel] to the exclusion of [National's] rights.' " *TAP Manutencao e Engenharia*

*Brasil S.A. v. Int'l Aerospace Group, Corp.*, 127 F.Supp.3d 202, 210 (S.D.N.Y. 2015); *see English v. Lattanzi*, 2015 WL 5038315, *7 (E.D.N.Y. Aug. 26, 2015) (denying summary judgment on conversion claim where there was a question of fact as to whether defendant exercised "*unauthorized*" dominion over property in question). "Consent and taking pursuant to legal process or valid court order, are both recognized justifications in conversion, as are public and private necessity, ... the right of distraint and many others." 2A N.Y. Pattern Jury Instructions 3:10 at p. 122 (2017) (citing cases). Additionally, "[o]ne entitled to the immediate possession of a chattel is not liable to another for dispossessing him of it." Restatement of the Law—Torts § 272 (1965).

▮ "Where the original possession is lawful, a conversion does not occur until after a demand and refusal to return the property." *D'Amico v. First Union Bank*, 285 A.D.2d 166, 172, 728 N.Y.S.2d 146 (1st Dept. 2001) (citing *MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co.*, 193 N.Y. 92, 85 N.E. 801 (1908)). "The refusal that will turn lawful possession into conversion must, however, be absolute. If it be qualified and the qualification is reasonable, made in good faith and communicated to the owner, there is no conversion." 2A N.Y. Pattern Jury Instructions 3:10 at p. 134. (2017) (citing cases).

## IV. Federal and New York Maritime Liens

### A. Relevant Federal Statutes

Chapter 313 of Title 46 of the United States Code is titled "Commercial Instruments and Maritime Liens" (the "Maritime Lien Law").

46 U.S.C. § 31342(a) establishes a maritime lien on behalf of a person "providing necessaries to a vessel on order of the

owner or person authorized by the owner" and provides that "a civil action in rem to enforce the lien" "may" be brought. 46 U.S.C. § 31342(a). "Necessaries" is broadly defined to include "repairs, supplies, towage and the use of dry dock or marine railway" *id.* at § 31301(4), as well as "any goods or services that 'are useful to the vessel, keep her out of danger, and enable her to perform her particular function.'" 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 9–3(5th ed. 2011) (quoting *Equilease Corp. v. M/V Sampson*, 793 F.2d 598 (5th Cir. 1986) (en banc)). Section 31343 provides that "a person claiming a lien on a vessel documented, or for which an application for documentation has been filed, . . . may record with the Secretary of Transportation a notice of that person's lien claim on the vessel." 46 U.S.C. § 31343(a).

Section 31307, which is part of Chapter 313, provides: "This chapter supersedes any State statute conferring a lien on a vessel to the extent the statute establishes a claim to be enforced by a civil action in rem against the vessel for necessaries." 46 U.S.C. § 31307.

## B. Relevant State Statutes

Section 184 of the New York Lien Law, establishes what is colloquially referred to as a "garageman's lien" and provides in relevant part:

> A person keeping a garage, hangar or place for the storage, maintenance, keeping or repair of motor vehicles as defined by the vehicle and traffic law, or of motor boats as defined by article seven of the navigation law, or of aircraft as defined by article fourteen of the general business law, and who in connection therewith tows, stores, maintains, keeps or repairs any motor vehicle, motor boat, or aircraft or furnishes gasoline or other supplies therefor at the request or with the consent of the owner or, subject to the provisions of subdivision two of this section, tows and stores any motor vehicle at the request of a law enforcement officer authorized to remove such motor vehicle, whether or not such motor vehicle, motor boat or aircraft is subject to a security interest, has a lien upon such motor vehicle, motor boat or aircraft for the sum due for such towing, storing, maintaining, keeping or repairing of such motor vehicle, motor boat or aircraft or for furnishing gasoline or other supplies therefor and may detain such motor vehicle, motor boat or aircraft at any time it may be lawfully in his possession until such sum is paid . . . .

N.Y. Lien Law § 184(1).

Article 9 of the New York Lien Law governs the enforcement of liens on personal property, such as the garageman's lien. Section 201 sets forth the procedure for a private sale of the personal property, with notice thereof to the owner, including notice of the owner's right to commence a proceeding to determine the validity of the lien. Section 206 allows for an civil action to foreclose on a lien.

## IV. Whether N.Y. Lien Law § 184 is Preempted by the Maritime Lien Act

In support of its argument that the N.Y. Lien Law is preempted, National relies principally upon the decision in *Midlantic National Bank v. Sheldon*, 751 F.Supp. 26 (E.D.N.Y. 1990) (hereinafter "*MNB*"). An extended discussion of that case is warranted.

The plaintiff bank in *MNB* filed a complaint in admiralty based on a preferred mortgage lien held on a boat purchased by defendant Sheldon. It was alleged that defendant Hanse Point Marina held a maritime lien against the same vessel for repairs and storage charges and was in

possession of the boat and had given notice of its intent to auction the boat to secure repayment. Plaintiff bank sought an order foreclosing its ship mortgage and directing the marina to turn over the boat for sale, arguing that the federal court had exclusive jurisdiction over this federal admiralty claim and its preferred ship mortgage had priority over any other lien. *Id.* at 27–29.

The *MNB* court began its discussion by noting that N.Y. Lien Law § 184 provides that "a person who stores, maintains, keeps or repairs a motor boat, or furnishes gasoline or other supplies" may detain a boat until payment is made "whether or not the vessel is subject to a security interest" and that "an unrecorded possessory lien under section 184 ordinarily has priority over a perfected security interest such as held by the bank" as evidenced by N.Y. UCC § 9–310. That statute provides that when in the "ordinary course of business" services or materials are provided to goods subject to a security interest "a lien upon the goods in possession" given by state law "takes priority over a perfected security interest." *Id.* at 28 (quoting N.Y. UCC § 9–310). The court continued:

> However, N.Y. UCC § 9–104(a) states that Article 9 is not applicable to "any security interest subject to any statute of the United States to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property." Here, it is clear that this Court's admiralty jurisdiction and the provisions of 46 U.S.C. §§ 3101 et seq. preempt the New York Lien Law.

*Id.* Having determined that the plaintiff bank had a preferred mortgage pursuant to 42 U.S.C. § 31322, the *MNB* court addressed whether the lien held by the marina was a "preferred maritime lien" because under federal maritime law " 'a

preferred mortgage lien has priority over all claims against the vessel (except for expenses and fees allowed by the court, and preferred maritime liens).' " 751 F.Supp. at 29 (quoting 42 U.S.C. § 31326(a)). "[U]nless the marina's possessory lien qualifies as a 'preferred maritime lien,' the Bank's preferred mortgage on the vessel has priority under the federal admiralty scheme." The *MNB* court concluded that the marina had established a "maritime lien' " as it had provided necessaries but that the provision of necessaries was not one of the six categories of liens that qualified as "preferred" under the statute. 751 F.Supp. at 29. Therefore, the plaintiff's bank lien was superior. *Id.* at 29–30.

Curiously, the *MNB* court did not discuss or even cite 46 U.S.C. § 31307. Rather, it relied upon sections 9–104 and 9–301 of New York's Uniform Commercial Code and the whole of Chapter 313, *viz.* 46 U.S.C. 31301 *et seq.* Indeed, the provision in N.Y. UCC § 9–104 that a possessory lien takes priority over perfected security interests directly conflicts with § 31326 of the Maritime Lien Act which provides that the preferred mortgage lien "has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred mortgage liens)." 46 U.S.C. § 31326(b)(1). Moreover, the *MNB* court analyzed whether the possessory lien, i.e. the § 184 lien, was a preferred maritime lien, an unnecessary exercise if the state lien was preempted. These details lend credence to RMC's assertion that despite the broad language used by the *MNB* Court, its holding is limited to the relative priority of a state possessory lien for necessaries and a federal statutory preferred mortgage arising under 42 U.S.C. § 31322. Given that the *MNB* court did not specifically address

Lien Law § 184 vis a vis § 31307, it is not controlling here.[2]

In determining whether the Maritime Lien Act preempts § 184 of the New York Lien Law, the starting point is the language of the statute itself. Here, the Maritime Lien Act does not purport to supersede all state statutes conferring a lien on a vessel; rather, it supersedes such state statutes only "to the extent the statute establishes a claim to be enforced by a civil action *in rem* against the vessel for necessaries." Thus it requires three conditions for preemption. First, the state statute must create a lien on a vessel. Second, the lien must be for necessaries. Third, the lien must be enforced by a civil action in rem against the vessel.

To the extent that the lien created by N.Y. Lien Law § 184 is for necessaries and is enforceable by a civil action in rem, *see* N.Y. Lien Law § 206, it appears to fall within the preeemption of the Maritime Lien Act. However, § 184 permits retention of the vessel until the sum paid is owed and N.Y. Lien Law § 201 separately provides the lien created by § 184 is also enforceable by a private sale. The right created by § 184—retention of the vessel until the sum paid is owed—is outside the explicit preemption provided for in the Maritime Lien Act. *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not preempted."); *cf. Dietrich v. Key Bank, N.A.*, 72 F.3d 1509, 1513 (11th Cir. 1996) (the "limited preemption" provision of § 31307 "contains no direct expression of congressional intent to preempt state law allowing for self-help repossession and sale"); *Native Village of Naknek v. Jones Pacific Maritime, LLC*, 141 F.Supp.3d 1157 (W.D. Wash. 2015) (Federal Maritime Lien Act does not preempt self-help remedy of summary foreclosure pursuant to Washington's chattel lien statute where no vessel mortgage was at issue); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 9-4 (5th ed. 2011) (the Maritime Lien Act "does not wholly preempt state statutes creating liens on vessels, and a state law security interest on a vessel is valid and enforceable. [It] does … preempt the enforcement in admiralty *in rem* of any state statutory liens within its scope.")

National's argument that actions to foreclose a mechanic's lien are in rem in nature is a red herring as RMC is not seeking to foreclose on its § 184 lien. As National points out, RMC's pleading does not assert a cause of action based on its state lien (*see* DE 10) but rather only to foreclose on its maritime lien (*see* DE 15). *See* 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 9-4 (5th ed. 2011) ("[T]he fact that a lien is created on a

---

**2.** *United States v. Zarco*, 187 F.Supp. 371 (S.D. Cal. 1960) similarly involved the question of priority of a preferred mortgage lien over a state possessory lien which state law provided was superior to a pre-existing lien of a chattel mortgage.

*Lih v. Wagner*, 65 Misc.2d 38, 316 N.Y.S.2d 497, 499 (Sup. Ct. Cortland Co. 1970), another case relied upon by National, is distinguishable. There, the lien relied upon was one created under § 80 of the Lien Law which is contained in Article Four, entitled "Liens on Vessels and Enforcement Thereof." Section 85 of the Lien Law, also contained in Article Four, provides that if a lien created by virtue "of this article [ ] is founded upon a maritime contract, it can be enforced only by proceedings in the courts of the United States, and in any other case, in the court of this state …." N.Y. Lien Law § 85. As a result of § 85, the court dismissed the action which was one to foreclose on a lien for repairs. Section 184 of the Lien Law in found in Article Eight, which contains no similar limiting provision.

vessel under the applicable state law obviously would not prevent a lien holder from asserting a federal maritime lien ....") [3] Nor does RMC seek to satisfy its lien through the private sale mechanism of Lien Law § 201. It has only asserted that it has a right to possession pursuant to § 184.

A determination that Lien Law § 184 is not explicitly preempted, does not end the matter. In addition to express preemption, there are the doctrines of implied preemption and field preemption. "Under the implied preemption doctrine, state laws are 'preempted to the extent of any conflict with a federal statute. Such a conflict occurs ... when []state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *In re Tribune Co. Fraudulent Conveyance Litigation*, 818 F.3d 98, 109–110 (2d Cir. 2016) (alterations in original) (quoting *Hillman v. Maretta*, 569 U.S. 483, 133 S.Ct. 1943, 1949–50, 186 L.Ed.2d 43 (2013). Field preemption exists when "federal law so thoroughly occupies a legislative filed as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *see Arizona v. United States*, 567 U.S. 387, 132 S.Ct. 2492, 2502, 183 L.Ed.2d 351 (2012).

RMC relies upon the analysis of field and implied preeemption contained in *Native Village of Naknek v. Jones Pacific Maritime, LLC*, 141 F.Supp.3d 1157 (W.D. Wash. 2015). National does not specifically address the issues of field and implied preeemption. Given the lack of input by National, the Court declines to address these issues. It suffices to say that National has not demonstrated it entitlement to judgment on its conversion claim. Even if this Court were to conclude that § 184 is preempted, National would not be entitled on this record to summary judgment. Given the lack of any controlling case law in this Circuit holding that the Maritime Lien Act preempts N.Y. Lien Law § 184, there is the question of whether RMC's qualified refusal to relinquish possession was reasonable, made in good faith, and communicated to the owner. If so, RMC is not liable for conversion. *See* discussion *supra*.

## CONCLUSION

Plaintiff's motion for summary judgment on its claim for conversion against RMC is denied.

## SO ORDERED,

---

**3.** Contrary to National's assertion, a federal maritime lien for necessaries need not be recorded. Tellingly, section 31343(a) provides that a person claiming a lien on a vessel "may" record a notice with the Secretary of Transportation. 46 U.S.C. 31343(b) (emphasis added). This is contrast to section 31343(d) which states that a person claiming lien on a vessel covered by a preferred mortgage "must" record and discharge the lien in accordance with state law, 46 U.S.C. § 31343(b)(emphasis added), and section 31321(a)(1) which requires that a bill of sale, conveyance, mortgage, assignment, or related instrument "must" be filed with the Secretary of Transportation, 46 U.S.C. § 31321(a)(1) (emphasis added). In addition, § 31342 provides that one who provides "necessaries to a vessel on the order of the owner or a person authorized by the owner-(1) has a maritime lien on the vessel; [and] (2) may bring a civil action in rem to enforce the lien ...," 46 U.S.C. § 31342(a). Conspicuously absent is a requirement that notice of the lien be filed before commencement of an action to enforce it.